GEORGE W. TODD respondent below, appellant, *v.* THE DIAMOND STATE IRON COMPANY complainant below, defendant.

*Equity — Specific Performance — Discretion of Court.— Contract—Personal Property—Tender.*

Specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the court, depending upon whether the contract appears, from all the circumstances, to be equitable or not.

As a general rule equity will not enforce specific performance of contracts relating to personal property, unless it is apparent that failure to perform cannot be adequately redressed by suit for damages.

Equity will not enforce specific performance of contracts for the sale of corporate bonds and stock.

A contract to be specifically enforced must be without ambiguity and uncertainty.

A contract providing for the sale of stock of a company for $10,500,—$3,000 cash, and the balance to be paid along, as may suit the vendee, within five years; interest to be computed at 5 per cent.; containing no agreement as to the time of any of the payments of the principal or interest; no statement as to the time when the stock is to be transferred; with no security for the deferred payments, —is too uncertain to be specifically enforced in chancery at the suit of the vendee.*

The same principles are applicable to a request for specific performance when presented by interpleader as when presented by original bill.

Where, by the terms of an agreement to buy stock of a company, a portion of the purchase price is to be paid in cash, and the balance within five years, and no payment has been made, an offer by letter to pay the whole sum after the five years have expired, and after the vendor has discovered the stock to be more valuable, is not such a tender as to entitle the vendee to specific performance.

Where one who is secretary of a stock company agrees with a stockholder to buy his

---

*Equity will not specifically enforce a contract wanting in definiteness or mutuality. *Bourget v. Monroe*, (Mich.) 25 N. W. Rep., 514; *Hall v. Loomis*, (Mich.) 30 N. W. Rep., 347; *Moses v. McClain*, (Ala.) 2 South Rep., 741; *Recknagle v. Schmalz*, (Iowa) 33 N. W. Rep., 365; *Durkee v. Cota*, (Cal.) 16 Pac. Rep. 5; *Fogg v. Price*, (Mass.) N. E. Rep., 741; *Appeal of Holthouse*, (Pa.) 12 Atl. Rep., 340; *Johnston v. Trippe*, 33 Fed. Rep., 530; *Magee v. McManus*, (Cal.) 12 Pac. Rep., 451; *Stembridge v. Stembridge's Adm'r.*, (Ky.) 7 S. W. Rep., 611; *Duff v. Hopkins*, 33 Fed. Rep., 599.

stock, and, during the negotiations, endeavors to convince the vendor that the stock is not worth par, and that he does not know where he can place it, while in fact he wished it for himself, and from his official position knows the stock is of much greater value, and when he has made no payment on the stock, specific performance will not be decreed, but vendee will be left to a suit at law to recover any damages he may have suffered from the breach of contract.†

(*January 16, 1889.*)

APPEAL from Court of Chancery, New Castle county.

This suit was brought to determine, by interpleader, between George W. Todd and Jethro T. McCullough which of them is entitled to 105 shares of the capital stock of the Diamond State Iron Company, the complainant, standing upon the books of the company as the property of the defendant McCullough, and to certain dividends thereon (and interest upon a part of the dividends) that have accrued since January, 1881. This stock, on January 10, 1882, was pledged by McCullough, to the defendant Darlington to secure the payment of a promissory note for $5,000 then loaned by Darlington to McCullough. This loan has never been repaid. Darlington still holds the certificates for the stock as a security for the payment of his loan. The defendant Todd, by his answer, claims that he became entitled to said stock, dividends, and interest by an agreement in writing for the sale of the same to him by McCullough, on September 21, 1881, and prays that McCullough be decreed to specifically perform said agreement; that McCullough and this company be decreed to pay to Todd all the dividends and interest; that the pledge of the stock by McCullough to Darlington be declared void, but if not, then that the debt of $5,000 be paid out of the purchase money, and the stock discharged from the pledge. The defendant McCullough, by his answer, resists the

---

†A bill to compel the specific performance of a contract is an application to the sound discretion of the court, and such performance will not be decreed when for any reason it would be inequitable. *Williams v. Williams*, (Wis.) 6 N. W. Rep.; 814; *Town v. Railroad Co.*, (Wis.) 27 N. W. Rep., 169; *Bird v. Logan*, (Kan.) 10 Pac. Rep., 564; *Kelly v. Kendall*, (Ill.) 9 N. E. Rep., 261; *Kelly v. Railroad Co.*, (Cal.) 16 Pac. Rep., 390; *Ramsay v. Gheen*, (N. C.) 6 S. E. Rep., 75.

specific performance of the agreement of September 21, 1881, and prays for its cancellation, on the ground that it was obtained from him by Todd by fraud and concealment, and that it is uncertain, incomplete, hard, and unconscionable. Todd was the secretary of the company from its organization ; and during all the time since McCullough became a stockholder, on December 28, 1878, he had charge of the books and papers and records of the company. He had a thorough knowledge of the business and affairs of the company, of the value of its property, the condition of its business, the amount of its actual present earnings, and of its probable future earnings.

*W. C. Spuance* and *Chas. M. Curtis,* for George W. Todd.

This court has jurisdiction in this proceeding to decree specific performance of a contract for a sale of shares of stock of a private corporation. *Angell v. Hadden,* 16 Ves., 202 ; *Atkinson v. Manks,* 1 Cow., 691 ; *Clark v. Flint,* 22 Pick., 231. *Frue v. Houghton,* 6 Colo. 318 ; *Cutting v. Dana,* 25 N. J. Eq., 265, 273. A court of equity has jurisdiction to decree specific performance of a contract concerning either real or personal property or choses in action, where the assessment of damages in an action at law for breach of the contract is either impracticable, or the damages would be so uncertain and conjectural as to be inadequate. *Satterthwait v. Marshall,* 4 Del. Ch., 337.

The general principle is applied to contracts for assignment of debts (*Cutting v. Dana,* 25 N. J. Eq., 265 ; *Adderley v. Dixon,* 1 Sim., & S., 607 ;) to contracts for the purchase of an annuity, (*Clifford v. Turrell,* 1 Younge &°C., 138 ; to contracts for assignment of patent, (*Satterthwait v. Marshall,* 4 Del. Ch., 337. It is now well settled that a contract for the sale of shares of stock will be specifically enforced where the stock is of uncertain value, and not readily obtainable in the market. 2 Story, Eq., Jur. § 717 *et seq.;* 1 Mor. Priv. Corp., § 218 ; Tayl. Corp., § 790 ; *Doloret v. Rothschild,* 1 Sim. & S., 590. The early decisions in England decreed

specific performance of contracts for the sale of stocks in railway companies, basing the decisions on the ground of the limited number of shares, and distinguishing between them and government securities. *Duncuft v. Albrecht*, 12 Sim., 189 ; *Cheale v. Kenward*, 3 De Gex & J., 27. A similar rule was in the early days of railroads also applied in this country. *Todd v. Taft*, 7 Allen, 371. The reason of the rule established in *Duncuft v. Albrecht*, still applies to private manufacturing corporations which have a limited number of shares and shareholders, and contracts for sale of them are continually enforced specifically in equity. *Leach v. Fobes*, 11 Gray, 510 ; *Treat v. Richardson*, 47 Conn., 582 ; *Johnson v. Brooks*, 93 N. Y., 337 ; *Frue v. Houghton*, 6 Colo., 318 ; *Treasurer v. Mining Co.*, 23 Cal., 390.

The contract is such as a court of equity will enforce. The place of performance was fully agreed upon by parol before the parties to the contract separated, and immediately after the contract was signed, and such parol agreement was thereby incorporated into and became a part of the original agreement. *Miles v. Roberts*, 34 N. H., 245. No objection can be taken to specific performance of the contract either because it contains no provision for the transfer of the stock, or because its provisions, in respect to the interest on the balance of purchase money, are ambiguous and uncertain, or because the time for payments of the purchase money is undetermined ; for the reason that the defendant Todd, within a few days after the day of performance, offered to pay the whole of the purchase money in cash.

The present case differs in many material points from the case of *Goodwin v. Collins*, 4 Houst., 55, as, for instance : The subject-matter is not real estate, but shares of stock ; and provision for security is not uniformly or usually inserted in contracts for the sale of the latter as of the former. In this case the failure to claim security is evidence of waiver of it ; and waiver is not rebutted by a subsequent tender of security. There is here no uncertainty in the character and meaning of the contract. Ambiguity, real or .

imaginary, as to payments of interest, or as to time of transfer, and the omission of provision as to security, are rendered wholly unimportant and immaterial by the tender of full payment. The balance of the price would be put in no jeopardy by a decree of specific performance in this case. The questions here arise in an interpleader suit.

There was no trust or fiduciary relation between the vendor and the vendee. In general, contracts by persons between whom a fiduciary relation as to certain subject-matter exists, when made concerning that subject-matter, are viewed with suspicion ; but such relation will not affect any dealings between them unconnected with the subject of the trust. *Knight v. Majoribanks*, 2 Macn. & G., 10 ; *Coles v. Trecothick*, 9 Ves., 246. The trust relation between shareholders and officers of a corporation is limited to matters relating to the management of the corporate business. *Carpenter v. Danforth*, 52 Barb., 581 ; *Deaderick v. Wilson*, 8 Baxt., 108 ; *Commissioners v. Reynolds*, 44 Ind., 509. There is no legal duty resting on an officer or director of a corporation who buys stock of the company from a stockholder to prove that he paid a full and fair price, or that he disclosed to the seller every fact known to him, and not to the seller, material to the question of the value of the stock. See above cases.

The contract of sale is wholly free from imposition or undue advantage, and is not tainted with fraud. No evidence is produced of false representations of any material fact by the vendee. As to effect of false representations, see Chancellor Bates in *Maclary v. Reznor*, 3 Del. Ch., 464. It is certainly true that the vendee made no representations, true or false, of a fact relative to value, which induced the sale. Unless, therefore, it reasonably appears that the representations induced the sale, the contract will be enforced, whatever representations may have been made by the party seeking performance. *Phipps v. Buckman*, 30 Pa. St., 401 ; *Pearce v. Carter*, 3 Houst., 385 ; *Reznor v. Maclary*, 4 Houst., 241, 260 ; *Slaughter v. Gerson*, 13 Wall., 379. A vendor has no right to rely upon

representations by the vendee as to facts and circumstances affecting the contract which are equally within the knowledge of both parties. *Davis v. Parker,* 14 Allen, 94; *White v. McGannon,* 29 Grat., 511; *Maclary v. Reznor,* 3 Del. Ch., 464; *Pearce v. Carter,* 3 Houst., 385; *Slaughter v. Gerson,* 13 Wall., 379; *Phipps v. Buckman,* 20 Pa. St., 401. In negotiating a contract of sale, the vendor and vendee treat at arms-length, and the buyer is not even bound to disclose facts within his exclusive knowledge as to the value of the thing bargained for. *Laidlow v. Organ,* 2 Wheat., 195; *Fox v. Mackreth,* 2 Browne, Ch., 420; *Phipps v. Buckman,* 30 Pa. St., 401; *Carpenter v. Danforth,* 52 Barb., 582; *Commissioners v. Reynolds,* 44 Ind., 509; *Conover v. Wardell,* 22 N. J. Eq., 498.

The authorities are conclusive that the question of adequacy of price must be judged of at the time the contract is made. *Coles v. Trecothick,* 9 Ves., 234; *Low v. Treadwell,* 12 Me., 441; *Falls v. Carpenter,* 1 Dev. & B. Eq., 237; *Galloway v. Barr,* 12 Ohio, 354; *Young v. Wright,* 4 Wis., 144; *Willard v. Tayloe,* 8 Wall., 557; *Lee v. Kirby,* 104 Mass., 420; *Hale v. Wilkinson,* 21 Grat., 75; *Brewer v. Herbert,* 30 Md., 301; *Cochran v. Pascault,* 54 Md., 17. Mere inadequacy of price at the time the contract of sale was made, is not sufficient objection to a decree of specific performance of the contract. 1 Sugd. Vend., 212; *Western v. Russell,* 3 Ves. & B., 187; *Coles v. Trecothick,* 9 Ves., 234; *Seymour v. Delancy,* 3 Cow., 445; *Lee v. Kirby,* 104 Mass., 420; *Viele v. Railroad Co.,* 21 Barb., 381; *Cochran v. Pascault,* 54 Md., 1; *Shepherd v. Bevin,* 9 Gill, 32; *Plunkett v. Dillon,* 4 Houst. 338, 411. Subsequent increase in price is not considered in courts of equity a hardship, or as making the contracts inequitable. *Falls v. Carpenter,* 1 Dev. & B. Eq., 237; *Willard v. Tayloe,* 8 Wall., 557; *Low v. Treadwell,* 12 Me., 441; *Powers v. Mayo,* 97 Mass., 180.

The strict rules adopted by courts of equity in other cases will not be applied in settling legal rights of several defendants by a decree in an interpleader suit, because the rights to be settled are

rights at law, (2 Story, Eq. Jur., §§ 808, 822;) because neither of the defendants is in the position of complainant; because the submission of all the defendants to have their legal rights determined by this court makes it necessary that it should settle their conflicting claims.

The defendant Todd has, in legal effect, fully performed his part of the contract. The strict common-law rule as to the character of a tender does not prevail in equity; and, if the vendor has openly refused to perform, the vendee need not make a tender or demand. It is enough that he is ready and willing and offers to perform in his pleadings. *Pleasonton v. Raughley*, 3 Del. Ch., 123; *Hunter v. Daniel*, 4 Hare, 420, 433; *Brock v. Hidy*, 13 Ohio St., 306, 310; *Maxwell v. Pittenger*, 3 N. J. Eq., 156; *Bass v. Gilliland*, 5 Allen, 761; *Wilkins v. Evans*, 1 Del. Ch., 156.

The defendant, McCullough, is not entitled to have decreed to him interest upon the purchase money, having refused to accept it when tendered him.

*Davis v. Parker*, 14 Allen, 94; *Bass v. Gilliland*, 5 Ala., 761.

*Anthony Higgins* and *J. H. Hoffecker*, for McCullough and Darlington.

Specific performance of the alleged contract of sale, September 21, 1881, should be refused. To decree the specific performance of a contract of sale, is not a matter of course, but rests entirely in the discretion of the Court upon a view of all the circumstances. *Hudson v. Layton*, 5 Har. (Del.), 74; *Godwin v. Collins*, 3 Del. Ch. 189, 4 Houst., 28; *Seymour v. Delancey*, 6 Johns, Ch. 225. Specific performances of this contract will not be decreed, because the contract is imperfect. *Godwin v. Collins*, 4 Houst., 55; Per GILPIN, C. J., and cases cited; *Hudson v. Layton*, 5 Har. (Del.), 74, 90. The contract makes no provision for the delivery of the stock, and the amount standing to the credit of McCullough of the surplus fund, or when it should be delivered to Todd. The agreement makes no provision for the payment of the interest on the balance

of $7,500, or when it should be payable. Therefore the Court should pause, and reflect whether it is not the dictate of a wise discretion to leave the complainant to his legal remedy. *Parkhurst v. Van Cortland*, 1 Johns. Ch., 275 ; *Colson v. Thompson*, 2 Wheat., 341 ; *Abeel v. Radcliff*, 13 Johns., 297 ; *Hammer v. McEldowney*, 46 Pa. St., 336.

Todd now offers to pay cash for the stock, and accept an immediate delivery of it ; but the Court will not alter the terms of the contract in order to enforce it. *Godwin v. Collins*, 4 Houst., 60 ; *Lord Ormond v. Anderson*, 2 Ball & B., 369. The contract was grossly unequal and improvident, in that it was without security for payment of the large sum of $7,500. The price Todd was to pay for the stock, and the proportion of the surplus fund belonging to it, was grossly inadequate· The company owns property in value far above the $400,000, which is the par value of its stock. The dividends alone declared, and interest on scrip dividends accrued, on these 105 shares of stock since the transaction of September, 21, 1881, amount to $15,352.80, being $2,665.30 in excess of the price Todd was to pay McCullough. The " profit and loss" account shows that the company, even in spite of the depression of business since 1881, in addition to the enormous dividends declared, has made vast profits.

Mere inadequacy of price independent of other circumstances, where it is such as shocks the conscience, and amounts in itself to satisfactory evidence of fraud, is ground, not only for refusing specific performance, but also for rescinding the contract. Pom. Spec. Perf. §§ 193, 194 ; Fry, Spec. Perf. §§ 422–424 ; *Wiest v. Garman*, 4 Houst., 119 ; *Osgoad v. Franklin*, 2 Johns. Ch., 1 ; *Coles v. Trecothick*, 9 Ves., 246. Inadequacy of consideration, when combined with unfairness of any kind, misrepresentation, concealment, or studied suppression of the true value of the property, mistake, or even with ignorance, will induce a Court to deny specific performance. Fry, Spec. Perf. § 420 ; Pom. Spec. Perf. § 196 ; *Deane v. Rastron*, 1 Anstr., 64 ; *Falcke v. Gray*, 4 Drew. 660 ;

*Cockell v. Taylor*, 15 Beav., 103, 115 ; especially *Godwin v. Collins*, 3 Del. Ch., 189.

It is a well-settled rule that in suits for the specific enforcement of agreement, even when written, that the defendant may show that the agreement was entered into through a mistake of either of the parties as to its subject-matter. 2 Pom. Eq. Jur. 860, 868 ; Pom. Spec. Perf. § 243 *et seq.; Gillespie v. Moon*, 2 Johns. Ch., 585.

This rule especially applies where the defendant against whom a specific performance is asked, has fallen into a mistake, which the plaintiff, by his acts or omissions, either intentionally, or unintentionally induced or made probable, or even possible, or to which the plaintiff contributed. Pom. Spec. Perf. § 244; *Gillespie v. Moon*, 2 Johns. Ch., 585; *Denny v. Hancock*, L. R. 6, Ch. 1 ; *Phillips v. Homfray*, Id., 770 ; *Vaskcomb v. Beckwith*, Lr. 8 Eq., 100 ; *Higginson v. Clowes*, 15 Ves., 516 ; *Webster v. Cecil*, 30 Beav., 62; *Mason v. Armitage*, 13 Ves., 25, 38 ; *Clowes v. Higginson*, 1 Ves. & B., 524; *Doggett v. Emerson*, 3 Story, 700 ; *Rider v. Powell*, 28 N. Y., 310 ; *Mathews v. Terwilliger*, 3 Barb., 50.

It is not necessary that the defendant's error should, to any extent, be referable to the conduct of the other party. A mistake which is entirely his own act or omission, or that of his agent, and for which the plaintiff is not the least responsible, will defeat the relief of specific performance. Pom. Spec. Perf. § 245 ; *Ball v. Storie*, 1 Sim. & S., 210 ; *Malins v. Freeman*, 2 Keen, 25 ; *Manser v. Back*, 6 Hare, 443 ; *Leslie v. Thompson*, 9 Hare, 268 ; *Baxendale v. Seale*, 19 Beav., 601 ; *Railroad Corp. v. Babcock*, 6 Metc., 346 ; *Post v. Leet*, 8 Paige, 337. Specific performance of a contract will not be enforced where the defendant has contracted under a mistake, to which the plaintiff has by his acts even unintentionally contributed. *Baskcomb v. Beckwith*, L. R. 8 Eq., 100 ; *Phillips v. Homfray*, L. R. 6 Ch., 770.

The Court will not specifically enforce this contract because it was induced by the misrepresentations of Todd to McCullough.

*Simar v. Canaday*, 53 N. Y., 306 ; *Stibbins v. Eddy*, 4 Mason, 414, 423 ; *McClellan v. Scott*, 24 Wis., 81 ; *Medbury v. Watson*, 6 Metc., 260 ; *Manning v. Albee*, 11 Allen, 522 ; *Ellis v. Andrews*, 56 N.Y., 87. Where the misrepresentation is definite, affecting the value of the subject-matter, or otherwise inducing the party addressed to enter into a contract, and it turns out to be untrue,—whether actually known to be untrue by the one making it is immaterial,—the party misled, especially if he had no means of ascertaining the truth of the statements, can on this account successfully resist a specific performance. Pom. Spec. Perf. § 219, note 1,—citing *Brooke v. Rounthwaite*, 5 Hare, 298 ; *Stewart v. Alliston*, 1 Mer., 26 ; *Price v. Macaulay*, 2 De Gex, M. & G., 339 ; *Farebrother v. Gibson*, 1 De Gex & J., 602 ; *Best v. Stow*, 2 Sandf. Ch., 298 ; *Harris v. Kemble*, 2 Dow & C., 463 ; *Rawlins v. Wickham*, 3 De Gex & J., 304 ; *Boyton v. Hazelboom*, 14 Allen, 107 ; *Fisher v. Worrall*, 5 Watts & S. 483. To be entitled to a specific performance a party making a statement as true, for the purpose of influenceing the conduct of the other party, is bound to know that it is true. Pom. Spec. Perf. § 217 ; *Ainslie v. Medlycott*, 9 Ves., 13, 21 ; *Wall v. Stubbs*, 1 Madd., 80 ; *Powell v. Elliot*, L. R. 10 Ch., 424 ; *Harnett v. Baker*, L. R. 20 Eq., 50 ; *Whittemore v. Whittemore*, L. R. 8 Eq., 603 ; *Leyland v. Illingworth*, 2 De Gex, F. & J., 248 ; *Dyer v. Hargrace*, 10 Ves., 505 ; *Holmes' Appeal*, 77 Pa. St., 50 ; *Swimm v. Bush*, 23 Mich., 99. Misrepresentation and concealment of material facts with respect to the value of the thing sold, made by the vendee during the negotiations, and preventing, or naturally tending to prevent, investigation or inquiry by the vendor himself personally, unacquainted with the property, while the purchaser has full knowledge respecting it, will prevent the vendee from obtaining a decree for a specific performance against the vendor. *Fisher v. Worrall*, 5 Watts & S., 483 ; *Swimm v. Bush*, 23 Mich., 99 ; *Holmes' Appeal*, 77 Pa. St., 50 ; *Iron-Works v. Wickens*, L. R. 4 Ch., 101 ; *Boynton v. Hazelboom*, 14 Allen, 107 ; *Best v. Stow*, 2 Sandf. Ch., 298.

The mere existence of opportunities for examination or sources

of information is not enough to create constructive notice, or to put the party upon inquiry.   Pom. Spec. Perf. § 224 ; *Drysdale v. Mace,* 2 Smale & G., 225 ; *Price v. Macaulay,* 2 De Gex, M. & G., 346 ; *Wilson v. Short,* 6 Hare, 379.   The defendant Todd, as secretary, officer and agent of the company, stood towards the company, its stockholders, and towards McCullough as a stockholder, in a fiduciary relation.   He was a trustee for the stockholders.   1 Perry, Trusts, § 206; Story, Ag., § 211.   The principle applies to directors of corporations.   *Coal Co. v. Sherman,* 30 Barb., 553 ; *Oil Co. v. Marbury,* 91 U. S., 587, 589 ; *Wardell v. Railroad Co.,* 103 U. S., 651 ; *Bent v. Priest,* 25 Amer. Law Reg. (N. S.,) 115 ; *Jackson v. Ludeling,* 21 Wall., 616 ; *Drury v. Cross,* 7 Wall., 299.   The same principle has been applied to the case of a paid manager or servant of a bank who was not a director.   *Bank v. Horner,* L. R., 9 Eq., 488 ; *Traer v. Clews,* 115 U. S. 528, 534, 6 Sup. Ct. Rep., 155 ; *Maddeford v. Austwick,* 1 Sim., 89.   Equity prohibits a purchase by parties placed in a situation of trust or confidence with respect to the subject of the purchase.   *Holt v. Holt,* 1 Ch. Cas., 190 ; *Dickinson v. Codwise,* 1 Sandf. Ch., 226 ; *Cram v. Mitchell,* Id., 256 ; *Greenlaw v. King,* 3 Beav., 49 ; *Torrey v. Bank,* 9 Paige, 649, 663.   Misdescription, consisting of omitting material particulars, however free of wrongful intent they may be, have often been held a sufficient defense to suits for specific enforcement.   2 Pom. Eq. Jur., § 905, note 1; *Shirley v. Stratton,* 1 Brown, Ch., 440 ; *Deane v. Rastron,* 1 Anstr., 64; *Ellard v. Lord Llandaff,* 1 Ball & B., 241 ; *Hesse v. Briant,* 6 De Gex, M. & G., 623 ; *Maddeford v. Austwick,* 1 Sim., 89 ; *Bonnett v. Sadler,* 14 Ves., 526 ; *Drysdale v. Mace,* 5 De Gex, M. & G., 103 ; *Baskcomb v. Beckwith,* L. R., 8 Eq., 100 ; *Lucas v. James,* 7 Hare, 410 ; *Denny v. Hancock,* L. R. 6 Ch., 1.

In the Court below, SAULSBURY, CHANCELLOR, delivered the following opinion :

The complainant in this suit, a corporation existing under the

laws of this state, states that there stands in the name of Jethro T. McCullough, one of the defendants in this cause 105 shares of the capital stock of said company, which were transferred to the said defendant on the 28th day of December, A. D., 1878, by George C. Simpson, executor of Jethro T. McCullough, deceased ; that, in the latter part of the year 1881, the president of the said corporation complainant was notified by the defendant George W. Todd that he had become purchaser of said stock then and theretofore appearing in the name of the said defendant McCullough on the books of the said corporation.   It appearing that McCullough having refused to assign said shares of capital stock of said company to Todd, he, (Todd,) gave notice to the president of the corporation that he had purchased of Jethro T. McCullough his entire interest in the company, including all of his stock and the accrued dividends thereon, and all his share of the surplus fund and the accrued interest therson, and that, although McCullough refused to make him proper transfers thereof, he should insist upon his compliance with his contract.   " Your company," he says, " is hereby notified and required to make no transfers of said stock or payments of said dividends, surplus fund, or interest, except to me, or upon my order."   Subsequent to the date of said notice, McCullough, through his attorney, made a formal demand upon the complainant for the payment to the said McCullough of all dividends then and theretofore accrued upon the said 105 shares of stock, which demand, in view of the conflicting claims upon the complainant with respect to the stock, he says, he was unable to comply with.   A suit was afterwards instituted against the company in the district court of the United States by McCullough.   It appears by the bill that Edward Darlington claims an interest in said stock by way of an assignment of the same to him as collateral security for a debt.   The bill prays that Todd, McCullough, and Darlington may interplead with each other with respect to their several interests and rights in the subject-matter in dispute.   A decree of interpleader was entered by consent and agreement of all

the parties, complainants and defendants. It was also ordered, upon like consent and agreement, that the complainant, at or before the first day of the next ensuing term of the court of chancery in and for New Castle county, pay into court the sum of $9,149.80, being the amount in the bill mentioned as the amount of accrued dividends and interest on said stock, the said sum, when so paid into court, to abide the decision of the court as to the rights therein of the parties respectively. It was also ordered, by like agreement and consent, that the complainant " pay into court all such other and further dividends, interests, and moneys as have accrued upon said stock since the filing of said bill, and which may hereafter accrue upon the same, when and as the same shall become due and payable." The whole proceedings up to this stage of the cause seems to have been amicably arranged and agreed upon by the solicitors for the parties, respectively, as per agreement in writing filed in the cause. The answers of the defendants have been filed, and the proofs taken. There seems to be no controversy as to the rights of Darlington, the stock having been pledged to him without notice of any controversy in respect to the same between Todd and McCullough. The question, therefore, for me to decide, is to whom the stock, dividends thereon, and interest on the surplus in controversy, in equity belongs; or, in other words, was the contract, in respect thereto, between Todd and McCullough such a contract as a court of equity will by its decree specifically enforce?

Specific performance as to contracts has been defined, " the actual accomplishment of a contract by the party bound to fulfill it ;" " performance of a contract in the precise terms agreed upon ; strict performance." This is a sufficient definition for the purposes of this case. A court of equity must interpret a contract between parties as it is made by them. It cannot make a contract for parties. It is the established rule that " a specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the court upon a view of all the circumstances." Says Chancellor Bates in *Godwin v. Collins*, 4 Houst., 28. " A court of

equity will not interfere to set aside a contract upon any ground short of incompetency or fraud ; but, when called upon to enforce a contract specifically, the court will go further, and inquire whether the contract is an equitable one,—such as a court of equity, seeking only to do equity, ought to enforce ; not that this court will weigh nicely the relative advantages or disadvantages of a bargain fairly made, but it will consider whether, either from gross inadequacy of consideration or inequality of terms such as shocks the common sense of justice, or from anything in the relations of the parties, or in the circumstances of the contract, it is unconscientious for a party to exact his advantage. Now, as it is impossible to reduce within the limits of a legal definition or rule the various and complicated transactions which may render a contract inequitable, the court must unavoidably deal with each case upon its own circumstances. Herein precisely appear the nature and limits of the discretion assumed by the court for this branch of its jurisdiction, and also in what sense it is that a specific performance is said to be ‘ not a matter of course.’ The relief lies in the discretion of the court, so far, and only so far, that it must necessarily judge whether, under the circumstances of the case, the contract is or is not an equitable one.” Again, the same chancellor says, in the same case : “ But, whatever be the grounds of the discretionary character of the jurisdiction for specific performance, the power to grant or refuse relief according to the equities of the particular case has become settled by authority of the most eminent judges in all times.”

Without further elaboration on this point, it is sufficient to refer to the opinion in the case of *Godwin v. Collins*, where this and other principles applicable to this case are satisfactorily discussed. In order to determine whether Todd, one of the defendants, is or is not entitled to a decree in his favor, it is necessary to consider whether his contract of purchase from McCullough of his interest in the Diamond State Iron Company, which is hereafter set out, is or is not such as a court of equity, in the exercises of a reasonable and just discretion, would enforce specifically upon a bill filed by

25

him for that purpose.   It is not material to the proper decision of this case that such a bill has not been filed.   The principles which would govern a court of equity in the determination of a bill for the specific performance of the contract necessarily arises in this bill of interpleader, in which the rights of the parties are to be determined.   It is a general rule that Courts of Equity will not interpose, by decree for specific performance of contracts, for the sale or delivery of goods or chattels, because compensation at law is generally adequate in such cases.   Yet there are exceptions to this general rule, as in articles of exceptional value. Goods which have a peculiar value, as articles of curiosity, antiquity or affection, the loss of which could not be estimated in damages, will be decreed to be delivered to the person entitled; such as family pictures, furniture or heir-looms.   So specific performance will be decreed of a contract for the delivery of chattels which no one but the defendant can supply, and which are necessary to enable the plaintiff to fulfill an engagement with a third person, as if a man were to contract to furnish timber to a shipbuilder who had agreed to complete a ship by a given time, which he could not do unless the timber was supplied by-the defendant; but not where the delivery of the chattels by the defendant is a mere question of convenience, nor where a decree of specific performance would enable a complainant to have the benefit of an unfair, inequitable or unconscionable contract or agreement.   As a general rule, equity will not decree for specific performance of contracts relating to personal property for the reason that compensation in damages is ordinarily sufficient.   Sometimes, however, the detention of chattels cannot adequately be redressed by damages, and in such cases the jurisdiction of equity attaches.   This is not, ordinarily, the case for the sale of stock.   I shall not cite the numerous authorities, easily accessible, in support of these propositions.   I will further remark that contracts for the sale or assignment of things in action may be enforced by the purchaser by compelling a transfer and delivery, where the legal damages might be too uncertain and conjectural to

constitute an adequate compensation. And, since the remedy must be mutual, the vendor may also maintain the action in such cases. In respect to stocks, it is the settled rule in England and the United States that contracts for public securities, government stocks, bonds, etc., will not be enforced, since they are always to be bought in the market. But contracts for the sale of railway and other business corporations, and shares and bonds, will be enforced in England. The recent English reports abound in such cases. But in the United States all such securities are ordinarily purchaseable in the market, and the rule is settled by the weight of authority, although there are some cases to the contrary, that contracts concerning stocks and bonds of corporations, like these concerning government securities, will not be specifically enforced. I deem it unnecessary to refer particularly to the many authorities which support these propositions. In the case of *Godwin v. Collins*, 4 Houst., 28, which was an appeal from Chancellor BATES, the Court of Appeals announced the following principles : The general doctrine of a Court of Equity is that decreeing of specific performance of a contract is discretionary, especially in those cases in which the party may have adequate compensation at law in the shape of damages for the injury actually sustained ; for in such cases the Court will not feel itself bound to interfere, but will leave him to pursue his remedy in a court of law. In these cases it is not what a Court of Equity must do, but rather what it may justly do under the circumstances. In the case of a contract in respect to the sale of land, it must be in writing according to the statute of frauds, and it must be so complete and perfect, indeed, as to manifest clearly the terms of the contract and the intention of the parties, and, as it is required to be in writing, must speak for itself. Defects cannot be supplied in it. It must be certain in itself, or capable of being reduced to certainty by reference to something else which is thus made a part of it, so that the terms of it, and the intention of the parties, can be ascertained with reasonable precision. These rules may, however, be modified in cases of fraud or part performance of the contract when

they exist.  But when the case stands on the naked agreement alone, and the complainant has not been put in possession of the property, nor has made any improvement, nor expended any money on it, nor has in any respect been led, in consequence of the agreement, to do anything which has resulted to his detriment, the court will not decree the specific performance of it.  And where the stipulation in the agreement is that one-half of the purchase money is to be paid by the purchaser on the day the possession of the premises is to be given, and the remainder in installments of $500 each, payable, with interest, annually, commencing with January 1, 1868, but without any provision in it for securing such deferred payments, the Court will not supply the omission of it, or infer that it was the understanding and intention of the parties that they were to be secured, in the usual method in such sales, by bond and mortgage, or decree a specific performance of the agreement, notwithstanding the complainant tenders one-half of the purchase money on the day appointed, and his bond and mortgage on the premises for the deferred payments as stipulated, and in his bill submits himself to the order and direction of the Court in that particular.  The vendor's equitable lien for the unpaid purchase money, at least, would be but a very imperfect and inadequate security.  The exercise of a sound discretion, according to the circumstances of each particular case, lies at the very foundation of this extraordinary jurisdiction of specific performance of contracts, and the Court, though not exempt from the general rules and principles of equity in granting or withholding relief, uniformly acts with greater freedom than when exercising its ordinary powers.  4 Houst., 28.

The agreement in *Godwin v. Collins* was as follows :  "Rec'd August 20, 1866, of D. C.Godwin, ten doll., in part payment of the purchase money of the farm and premises where I now live, containing sixty-six acres ; possession to be given on or before January 1, 1867, clear of all taxes or incumbrances whatever; four thousand dolls. to be paid when possession given, the remainder in installments of $500 each, payable, with interest, annually, com-

mencing January 1, 1868 ; the said Godwin to have the privilege of anticipating the deferred payments. Witness my hand and seal. [Seal.]   The whole purchase money to be eight thousand dollars (8,000).   S. M. COLLINS." The chancellor refused to decree a specific performance of this contract, and on appeal the Court of Appeals affirmed his decree, dismissing the bill.   The contract between Todd and McCullough, which is sought to be enforced in the case before me, is as follows :

WILMINGTON, DEL., September 21, 1881.
" *Geo. W. Todd*—DEAR SIR: I will sell my entire interest in the Diamond State Iron Co. (which includes my stock, and amount to my credit of the surplus fund) for the sum of ten thousand and five hundred dollars.   Of this amount I will take three thousand dollars cash, November 1, 1881, and the balance due me, seventy-five hundred, (7,500), you can pay me along as it suits you, within and during the next five (5) years, say by November 1, 1886; interest to be computed at the rate of five (5) per cent. per annum, from November 1, 1881 ; accrued interest on my stock, and on the amount to my credit of the ' surplus fund, to go with the stock, and is included in the above ten thousand five hundred dollars.

J. T. McCULLOUGH
" Witness at signing:   JOHN W. TODD."

Indorsed across the face of the above, is the following :

" WILMINGTON, September 21, 1881.
I hereby accept your offer for your entire interest, this day, in the Diamond State Iron Company as per this letter.

GEO. W. TODD."

The above letter was written by Todd and signed by McCollough.   The indorsement thereon was written and signed by Todd.

To give effect to the claim of Todd in this suit, and to make a decree in his favor, would be to give him all the benefit under this

contract that could be given to him in a suit by him against Mc-
Cullough for the specific performance of the contract, and this is in
substance what he asks to be done by his answer, and such, doubt-
less, is the understanding of his solicitors who drew that answer.
The second and third prayers incorporated in that answer are as fol-
lows : "That the said McCollough be decreed specifically to per-
form his said agreement for the sale of his entire interest in said
company, and to transfer to the defendant said one hundred and
five shares of the stock of said company, and all of his share in the
surplus fund of said company, and all the scrip and cash dividends
which have accrued or may accrue, or which have been declared, or
may be declared, on said stock, and the interest thereon, and to de-
liver up to the said defendant all certificates and papers in his pos-
session or control relating to the same ; he, the said defendant, pay-
ing the said purchase money as the Court may direct,  That the
said company be decreed to pay and deliver to the said defendant
all the share of the said McCullough in the surplus fund of said
company, and all the unpaid scrip and cash dividends which have
accrued or may accrue, or which have been declared, on said stock,
and the interest thereon, and all certificates relating to said stock
and said scrip, dividends, and all moneys due from said company on
account of said stock ; and that said company be decreed to do and
perform, and suffer and permit to be done and perform, all such
acts and things as may be necessary for the transfer to the said de-
fendant of the entire interest of said McCullough in said company."
It is not pretended that the cash payment of $3,000 was made on
the 1st day of December, 1881 ; and it is not stated in the contract
that the stock of McCullough, and his credit in the surplus fund,
which is included in the contract to sell his entire interest in the
Diamond State Iron Company, were to be transferred on the 1st
day of December, 1881, or when said cash payment should be
made ; nor does the contract contain any stipulation in this respect.
That such transfer was to be made December 1, 1881, can, at most,
only be a matter of inference ; and this inference would necessarily

lead to the further and greater inference that McCullough was to transfer all his interest in the company for less than one-third of the contract price, without any security for more than two-thirds of that contract price, and without any stipulation in respect to the payment thereof before November, 1886.

The contract contains no stipulation as to the time when the interest, or any part thereof, was to be paid on the sum of $7,500. The only thing stated in the contract in respect to the payment of the $7,500 is that he (Todd) could pay that sum " along as it might suit him, within and during the next five years, say by November 1, 1886." The contract fixes no time for its payment, or any part thereof, previous to November 1, 1886. No security for its payment, or any part thereof, before that period, or even at that period, was provided for in the contract; and to any demand by McCullough on Todd for the payment of that balance, or any part thereof, a sufficient answer by him would be that it did not suit him to make any payment in respect to the same. The contract contains no stipulation as to the times when interest should be paid on the sum of $7,500, the deferred payment. It does not stipulate that that the interest should be paid annually, so that Todd might refuse to pay any interest before November 1, 1886. The only stipulation in this respect was that the interest should be computed at the rate of 5 per cent. per annum, from November 1, 1881. Todd does not agree that interest should be paid annually on that sum, but that the interest on the sum of $7,500, which was payable on November 1, 1886, should be computed at the rate of 5 per cent. per annum; and the contract does not state definitely and with certainty at what periods such interest should be paid. A contract, to be specifically enforced, must be without ambiguity and uncertainty. It cannot be merely the subject of inference. It must in its terms be clear, definite and certain. It must be a contract by the parties to it, and not a contract made by the Court for the parties. It cannot be changed, altered or varied by any tribunal, legal or equitable. It must be complete and perfect in itself, and certain in all its pro-

visions.  For these reasons alone, this Court could not decree the specific performance of said contract.

The solicitors for Todd attempt to distinguish this case from the case of *Godwin v. Collins,* in these respects :  (a) The subject-matter is not real estate, but shares of stock, and provision for security is not uniformly or usually inserted in contracts for the sale of the latter, as of the former.  (b) In this case the failure to claim security is evidence of security.  (c) There is here no uncertainty in the character and meaning of the contract.  (d) Ambiguity, real or imaginary, as to payments of interest, or as to time of transfer, and the omission of provision as to security, are rendered wholly unimportant and immaterial by the tender of full payment.  (e) The balance of the price would be put in no jeopardy by a decree of specific performance in this case.  (f) The questions here arise in an interpleader suit.  I do not think these attempted distinctions are tenable.  It must be borne in mind that the writing termed the "contract," which Todd drew, and which McCullough signed, and which is the only one, if any, under which Todd can claim the stock, dividends and scrip of McCullough in the Diamond State Iron Company, is the only contract between the parties in respect to the same.  It is this contract, and no other, which this Court could specifically enforce, and Todd can have the advantage of no contract in this case which a court of equity would not specifically enforce upon a bill filed for that purpose.  It matters not that a contract relates to personalty, and not to land.  It is true that a contract in respect to the sale of land must be in writing, and that this is not generally necessary in respect to the sale of personalty ; but the particular contract was in writing, and, being reduced to writing, it speaks for itself, and a Court of Equity, no more than a Court of Law, has the right to add to or subtract from its provisions.  And the declaration that the provision for security is not uniformly or usually inserted in contracts for the sale of shares of stock, as it is in the sale of land, is simply assertion without proof and without reason ; and all the reasons for the non-enforcement of a contract in

respect to land equally apply in respect to contracts for the sale of shares of stock in this respect. Nor is it reasonable to assert that the failure to claim security is evidence of security more in the one case than in the other. As to there being no uncertainty in the character and meaning of the contract between McCullough and Todd, I cannot preceive that it is less wanting in certainty, especially in reference to to the payment of the balance of $7,500, than the contract between Collins and Godwin. It is certainly much more unreasonable, and much more wanting in consideration and deliberation, in that it only specifies that the payment of the large sum of $7,500 might be paid along as it might suit Todd, within and during the next five years, say by November 1, 1886; and all the remarks made by Chief Justice GILPIN in the case of *Godwin v. Collins* upon appeal, in respect to the payment of interest, are equally applicable to the contract as between McCullough and Todd. In respect to the fourth distinction, as to ambiguity as to the payment of interest, as to time of transfers, and omission of provision as to security, and the allegation that they are held wholly unimportant and immaterial by the tender of a full payment, a sufficient answer is to be found in the fact that such tender was not made before or at the time the contract was signed, nor by the 1st of November, 1886, but afterwards, if made at all. It seems to have been an offer by letter merely, and only when McCullough had discovered that his interest in the company was much more valuable than what the writing, purporting to be a contract, had led him to suppose this to be, and therefore had refused to comply with the contract. No governing weight can be given to the allegation that " the balance of the price would be put in no jeopardy by a decree of specific performance in this case," because, if the contract in this case is determined by its own terms and provisions, much greater jeopardy would exist in it than in the case of *Godwin v. Collins,* in which latter case a mortgage to secure the balance of the purchase money was tendered by Godwin, the purchaser. It is wholly immaterial that the question arising in this case arise in an interpleader

suit. They are no more or less in principle and effect than those which would arise in a suit for specific performance of the contract. I think that the objections stated by Chancellor BATES to a decree for a specific performance in the case of *Godwin v. Collins*, founded upon the want of certainty and security in reference to the deferred payments, and those stated by Chief Justice GILPIN upon an appeal in the same case, and founded upon the want of consideration and deliberation, evidenced in the contract in that case, equally apply to the present case.

I shall not enter into an examination fully of all the testimony in this case. It is sufficient to remark that no one, in my opinion, upon reading that testimony, can fail to be impressed with the fact that the situation of the parties to the contract in respect to the value of the interests of McCullough in the Diamond State Iron Company was not equal, but greatly and amazingly unequal. Todd had the means of knowing, and doubtless did know, with much greater certainty and accuracy the value of those interests than McCullough. He was not only a stockholder, as was McCullough, in the company, but he was its secretary. It is not necessary to decide that, being such secretary to the company, he sustained a relation of trust and special confidence to each individual shareholder in the corporation ; but being such secretary, and as such having charge of the books and records of the company, and cognizant of the business affairs of the company, and of its records and acts, he necessarily possessed that amount of information in respect to the value of its stock, scrip, and dividends which could not be equally known to the individual stockholders of the company. It is not necessary to determine, nor do I think it material to inquire, who commenced the negotiation, McCullough or Todd, in respect to the sale and purchase of McCullough's stock and interest in the company. The statements of Todd and McCullough, under oath, in respect to this matter, are directly opposed. No one else had any knowledge in respect thereto.. Possessing the advantage which Todd did as to knowledge of the value of the stock and interest of the stockhold-

ers in the company, he was bound, as a frank and honest man in the negotiation of sale and purchase of McCullough's interest in the company, not to make any statement or declaration that would impose upon or in any way mislead or deceive McCullough. There is no testimony in this cause in respect to McCullough's business capacity, or which would justify the declaration that he was wholly unfit to have the management of his estate ; but, if the testimony in this cause is to be believed, he certainly did not evince that capacity for business transactions which is ordinarily to be expected in those possessing considerable business interests. The father of McCullough seems to have been a large stockholder in the Diamond State Iron Company. He died, and his executor transferred to Jethro T. McCullough, and at least one other, if not more, of his children, stock in this company amounting, in the share to each, $10,500. The shares of one of these brothers, Todd, bought in 1879 for $75 a share, when the par value thereof was $100 per share, and he apportioned that stock between himself, Mendinhall, the president of the company, and Smyth and Davis, officers and directors of the company. There seems to be no other portion of this stock sold or purchased afterwards until September 21, 1881, when the alleged contract between Jethro T. McCullough and Todd was entered into. Who commenced the negotiations in respect to this contract, as before stated, does not sufficiently appear by the evidence in this cause, the testimony of Todd and McCullough thereto being flatly contradictory. In the letters which are in evidence, which Todd wrote to McCullough, I cannot think that he was frank, or evinced that sincerity which, under the circumstances, he should have evinced. He evidently endeavored to impress McCullough with the idea that his stock in the company was not worth more than its par value. He stated that he did not know where he could place the stock. There is no proof that he even made any inquiry in respect to that matter, or that he ever sought to place it anywhere than under his own control, and for the interest of himself and two or three others, officers of the company, who might wish to " even

up" their stock. His own evidence is to the contrary. He wanted it for himself. These others were the same officers and persons among whom he divided the stock which he had theretofore, in 1879, purchased from John McCullough, the brother of Jethro. His zeal for the possession of the stock was apparently greatly enhanced after the contract was signed. It was evidently much greater than it was when McCullough made inquiry of him what he would give him for his stock.

I cannot avoid the conviction, from the proofs in this cause, that the interest of Jethro T. McCullough in the Diamond State Iron Company, which was agreed by him to be sold to Todd, was, on the day when the contract was made, worth at least not less than one-half more than the amount stipulated in the contract, and that Todd knew this fact, which McCullough did not in fact know, notwithstanding he (McCullough) may have attended and did attend the meetings of the stockholders in 1880 or 1881. The dividends due on the stock, and what was due on the surplus scrip, in the short time after the contract was signed, within the period of five years, seems to have amounted to about $9,000, not greatly unequal to the contract price of the interest agreed to be sold by McCullough to Todd. Now, this contract between McCullough and Todd is not an executed contract, but an executory contract. This is a proceeding, not to rescind the contract, but, in effect, as far as the interests of Todd are concerned, to decree its specific performance. I would not, under these circumstances, decree a specific performance of that contract if a bill was filed for that purpose; and, considering contracts such as I have described unequal, unfair and unjust, I shall refuse to make any decree by which Todd can avail himself of the benefits of it, but shall leave him to assert his rights, under the contract, to a court of law, where a jury may award him whatever damages for its violation they may believe him to have sustained. He has not proved before me that he has sustained any. He has not paid one dollar of money under the contract, but appears to have received the first payment of interest in the surplus fund.

As to the argument that this stock had no market value, and could not, therefore, be substituted by the purchase of similar amount in the market, it is sufficient to say that there was nothing that made it particularly valuable to Todd other than the gain he would make by the difference in price which he was to give, and the real value of the stock at the time the contract was made. Indeed, this corporation seem to have been particularly a close corporation, —one which did not permit the value of its stock to be quoted in the market. It is reasonable to infer from the proofs in this case that the original shares of stock remained in the possession and control of the original holders thereof, with exception therein of the interest of a brother of Jethro T. McCullough, the defendant disposed of some time previously. But the means of determining the damages which Todd had suffered, if he has suffered by reason of non-compliance with the contract, are abundant in a court of law. It there would be perfectly competent for him to avail himself of the testimony of every one of the eight or ten shareholders in the company to prove the value of the stock at the time of the alleged contract of purchase, and he himself, as the law of this State now is; might become a witness in respect thereto. There certainly would be no denial of justice should Todd's case be heard by an honest jury, who might assess such damages as they believed him to have justly sustained.

THE COURT affirmed the decree of the Chancellor and dismissed the appeal.