ECKSTEIN *v.* DOWNING.

Equity does not decree specific performance of a contract for the sale of shares in a manufacturing corporation, when it appears that the remedy furnished by an action at law for the breach of it is adequate.

When it appears that the plaintiff has an adequate remedy at law, equity does not always enforce specific performance of a contract in his favor, although the defendant might, at his own election, be entitled to that remedy.

BILL IN EQUITY, to enforce specific performance of a contract to transfer to the plaintiff sixty shares of the capital stock of the Abbot-Downing Company, in payment for the pleasure yacht Una. Facts found by a referee. August 14, 1884, a bargain was concluded, by written correspondence between the defendant and the plaintiff's agents, Rider & Cotton, whereby the defendant was to give the plaintiff sixty shares of the Abbot-Downing Company stock for his yacht Una, then lying at a wharf in Portsmouth. At that time the defendant was twenty-two years old, and neither the plaintiff nor his agents (who acted in entire good faith throughout) had any reason to question his competency to contract.

The Una was a well known yacht, and had acquired considerable reputation as a fast sailer. Her value, with her tackle, apparel, and furniture, in August, 1884, is alleged in the bill to be six thousand dollars and upwards. The answer admits that the value of the same to the plaintiff was six thousand dollars and upwards. At the hearing the defendant admitted, for the pur-

poses of this case only, that the market value of the yacht at the time of the alleged sale was six thousand dollars.

In July, 1884, the Abbot-Downing Company paid a semi-annual dividend of three per cent. The stock of this company is mainly held by the Abbot and Downing families, the only shares owned outside those families being a limited number held by some of the employés. It is not commonly offered for sale, and actual sales are very rare. The referee finds the value of this stock in August, 1884, and at the present time, to be sixty dollars per share. There was no evidence tending to show that the plaintiff had any wish (or reason for wishing) to become the owner of the Abbot-Downing Company stock rather than any other stock of equal pecuniary value, or that he would not have agreed to take any other stock of equal value in payment for the yacht.

On or immediately after August 14, Alfred L. Downing, with his men, went on board the Una, and began to clean the vessel. He cut a porthole, gave away the boarding with which the yacht had been covered, and also gave away a discarded stay-sail then used to cover some of the bedding belonging to the yacht. Downing and his men slept on board the Una, and drank some of the wine which was among the yacht's stores. Both parties understood that the title to the yacht was not to pass until the stock should be transferred. So far as it is a question of fact, the referee finds that the title to the yacht has never passed from the plaintiff to Downing.

August 19, 1884, Mrs. Hannah E. Downing, the mother of Alfred L. Downing, filed a petition in the probate office for Merrimack county, alleging Alfred to be a spendthrift, and praying for the appointment of a guardian over him. An attested copy of this petition was filed, on the same day, in the office of the city clerk of Concord, where Alfred resided. September 23, 1884, the probate court, upon the aforesaid petition, decreed Alfred L. Downing to be a spendthrift, and appointed Hannah E. Downing his guardian. The ward's assets at the present time consist of ninety-five shares in the Abbot-Downing Company, and other property worth not less than forty-five hundred dollars.

On the day when the above-mentioned petition was filed, Hannah E. Downing also filed a bill in equity against Eckstein, Rider & Cotton, and other parties. Upon this bill a temporary injunction was granted August 20, 1884, restraining the payment or transfer of stock from Alfred to the plaintiff; and since that time nothing has been done to the yacht except by mutual consent, for the purpose of protecting her. She is now at the wharf in Portsmouth, boarded up. On account of disuse, she has depreciated in value.

*J. S. H. Frink* and *Calvin Page* for the plaintiff. I. On general principles of equity the plaintiff is entitled to a decree. He

has ever been in a condition to perform his part of the contract, and "has shown himself ready, desirous, prompt, and eager to perform it." *Pickering* v. *Pickering*, 38 N. H. 400; 2 Story Eq. Jur., s. 776; *Seymour* v. *Delancey*, 6 Johns. Ch. 222. There is no question but that the contract was complete, and that the defendant broke the same. It is not necessary that there should be a delivery or a completed sale. If the plaintiff is willing and ready to deliver the thing, it is sufficient. After the service of the injunction the plaintiff had no occasion to do anything else in performance of his part of the contract. *Jones* v. *Barkley*, 2 Doug. 684; *Rawson* v. *Johnson*, 1 East 203; *Haines* v. *Tucker*, 50 N. H. 307. But the performance of a contract—even an oral one—partly executed, may be enforced. *Bennett* v. *Abrams*, 41 Barb. 619; *Tilton* v. *Tilton*, 9 N. H. 390; *Woodbury* v. *Gardner*, 77 Me. 68. The law now is, that where justice requires it in any case, equity will decree a specific performance. *Somerby* v. *Buntin*, 118 Mass. 279, 287; *Clark* v. *Flint*, 22 Pick. 231, 239; *Wendell* v. *Bank*, 9 N. H. 404. 421; *Carpenter* v. *Mut. Safety Ins. Co.*, 4 Sandf. Ch. 408; *Duke of Somerset* v. *Cookson*, 3 P. Wms. 390; *Lady Arundell* v. *Phipps*, 10 Ves. 148; *Nutbrown* v. *Thornton*, 10 Ves. 161; *Doloret* v. *Rothschild*, 1 Sim. & St. 590; 1 Story Eq. Jur., s. 714; *Ewins* v. *Gordon*, 49 N. H. 456; *Cushman* v. *Thayer Mfg. Co.*, 76 N. Y. 365; *Greene* v. *Railway Co.*, 1 Moak 546.

Especially is the remedy by specific performance applicable in cases of shares of stock in a corporation which are limited in number or not always to be had in the market. *Duncuft* v. *Albrecht*, 12 Sim. 189; *Leach* v. *Fobes*, 11 Gray 506; *Todd* v. *Taft*, 7 Allen 371; *Forrest* v. *Elwes*, 4 Ves. 497. And it is now settled law that in the case of such stocks equity will decree a specific performance. *Cheale* v. *Kenward*, 3 DeG. & J. 27; 1 Story Eq. Jur., s. 724a. The shares of the stock in question are limited in number, "not commonly offered for sale, and actual sales are very rare." They are held in the family of the defendant, and the family are contesting the plaintiff's claim in order to still keep the stock in the family, where its true value can never be ascertained.

There is no plain, adequate, or convenient remedy at law. The Una was a well known yacht, and had a reputation as a fast sailer. The refusal of a purchaser to take her after he had agreed to do so, and had taken possession of her, damaged her reputation and selling value among yachtsmen very seriously, just as the return of a horse after purchase injures the reputation and value of the animal.

The defendant cut a porthole in the yacht, and altered her so that her arrangement and condition had been changed to suit him, which is a great damage to the plaintiff. The value of a yacht is subject to such fluctuations, and depends upon so many different contingencies at different times, among different people, and in different places, that the judgment of others must fail to do jus-

tice, as between the parties, in regard to any difference of opinion.

II. One of the tests by which the question of enforcing a specific performance is determined is, whether the agreement sought to be enforced is mutual and the tie reciprocal. *Ewins* v. *Gordon,* 49 N. H. 444; *Pickering* v. *Pickering,* 38 N. H. 406; *Hall* v. *Warren,* 9 Ves. 605; *Cabeen* v. *Gordon,* 1 Hill Ch. 51; *Benedict* v. *Lynch,* 1 Johns. Ch. 370; *Cooper* v. *Pena,* 21 Cal. 403. If the defendant could have compelled the plaintiff to deliver the yacht by specific performance, then the plaintiff can now compel the defendant to take the yacht and deliver the stock. That the defendant could have had specific performance by the plaintiff is beyond question. The Una is the only yacht of that name, and by that name has achieved fame and earned a reputation. She is a special and unique chattel. The defendant had the right to own the Una, and if he had insisted upon his right, the court would have been unable to do justice to him in any way but by making him the owner. As a particular farm or a particular heirloom might be of great value to a person who wanted it, for the loss of which damages could not compensate, so with the Una. The books are full of cases which show that, upon this ground, the defendant would be entitled to specific performance.

*W. M. Ramsey* and *E. H. Pendleton, Jr.* (of Ohio), on the same side. I. The contract of sale was executed, not executory, and the complete legal title to the Una was in the defendant at the time of the service of the injunction, August 20, 1884. 2 Blk. Com., c. 12; Shep. Touch. 224; Noy's Maxims 87–89; Benj. Sales, ss. 315, 316: *Simmons* v. *Swift,* 5 B. & C. 862; *Dixon* v. *Yates,* 5 B. & Ad. 313, 340; *Gilmour* v. *Supple,* 11 Moore P. C. 551, 566; *Calcutta Co.* v. *DeMattos,* 32 L. J. (N. S) Q. B. 322, 328; *Morse* v. *Sherman,* 106 Mass. 430; *Mt. Hope Iron Co.* v. *Buffinton,* 103 Mass. 62; *Marble* v. *Moore,* 102 Mass. 443; *Ferguson* v. *Clifford,* 37 N. H. 86, 103; *Dudley* v. *Sawyer,* 41 N. H. 326; *Paul* v. *Reed,* 52 N. H. 136; 2 Kent Com. 492, 493; 1 Chitty Cont. 518–520.

II. The contract is mutual. The requisite of mutuality includes both a mutuality of legal right and a mutuality in the equitable remedy. As to the mutuality of legal right in this case there is no controversy, and upon principle and authority there can be no question as to the mutuality in the equitable remedy. The textbooks and authorities state the rule in the following simple and clear language: "If the right to the equitable remedy of specific performance exists at all, it must be mutual." 2 Story Eq. Jur., ss. 723, 796; Pomeroy Spec. Perf., s. 165; *Walker* v. *Eastern Counties Railway Company,* 6 Hare 602; *Brown* v. *Haff,* 5 Paige 240; *Cathcart* v. *Robinson,* 5 Pet. 278; *Old Colony R. R. Co.* v. *Evans,* 6 Gray 30. The doctrine of mutuality is not restricted in its application to contracts relating to real estate; it is equally

applicable to contracts relating to personality. The fundamental principles which guide the court are the same in either case. *Kenney* v. *Wexham*, 6 Mad. 357; *Withy* v. *Cottle*, 1 Sim. & St. 174; *Adderley* v. *Dixon*, 1 Sim. & St. 607; *Cogent* v. *Gibson*, 33 Beav. 557. Suppose Eckstein had refused to deliver the Una to Downing, and the latter had filed a bill in which he tendered the stock and prayed the court to compel Eckstein to deliver her to him : there would be no doubt as to the jurisdiction of the court, and Downing would unquestionably have been granted the decree prayed for, notwithstanding the personal nature of the subject-matter. Pomeroy Spec. Perf., *s.* 12.

The Una is a unique chattel. No amount of damages would have enabled Downing to go into the market and purchase another Una. She is so far from being a yacht that can be readily repro-duced, that we venture to say her builder, with the Una before him as a model, might build a dozen yachts and yet fail to launch a single one that would possess an equal capacity for speed. See *Peer* v. *Kean*, 14 Mich. 354; *Clark* v. *Flint*, 22 Pick. 238.

The fact that Eckstein had not completed his contract to the very letter, or had even refused to complete it in every particular, would not have prevented Downing from obtaining a decree for specific performance, with compensation. Lord *Eldon*, in *Mort-lock* v. *Buller*, 10 Ves. 315, states the doctrine as follows: "If the vendee chooses to take as much as he can have, he has a right to that and to an abatement, and the court will not hear the objection by the vendor that the purchaser cannot have the whole." The fact that Eckstein had a few more hours' work to do on the Una in order to fully comply with the terms of his contract, and that he was interrupted in the prosecution of the same and deterred from finishing by reason of the unequivocal refusal of the defend-ant to complete his part at all events, can certainly present no bar to the granting of the relief prayed for. It would be as inequi-table for a court of equity to listen to such an argument as it would be for a chancellor to deny the vendee a decree for specific performance on the ground that the vendor had refused to apply the last stroke of the brush. See *Ewins* v. *Gordon*, 49 N. H. 444. Eckstein, however, had delivered the Una to Downing, and vested the legal title in him as well, which of course renders the equity of his case much stronger. To permit Downing to refuse to de-liver the stock under these circumstances would be to countenance what in equity would amount to a fraud upon Eckstein.

Downing is deemed to hold the stock in trust for Eckstein. There can, therefore, be no question as to the right of the latter to compel delivery of the same. Pomeroy Spec. Perf., *s.* 14; *Hill* v. *Rockingham Bank*, 44 N. H. 567.

We call attention to a paragraph from the referee's report, which conclusively shows the utter inadequacy of damages for the non-delivery of the stock by Downing, to wit,—" The stock of

this company is mainly held by the Abbot and Downing families, the only shares owned outside those families being a limited number held by some of the employés. It is not commonly offered for sale, and actual sales are very rare." See *Clark* v. *Flint*, 22 Pick. 238.

Finally, we maintain that, even in the absence of all other grounds upon which to base the decree herein prayed for, the court, by reason alone of the rule that the equitable remedy must be mutual and reciprocal, should not only compel Downing to take the Una, but should also compel the delivery to Eckstein of the sixty shares of stock.

*Chase & Streeter*, for the defendant. The granting the remedy of specific performance rests in a sound and reasonable judicial discretion. It will not be granted when the legal remedy is sufficient, nor when the contract and the breach thereof can be satisfied by a payment of money. It will not be granted in the case of contracts relating to chattels, except (1) in the case of unique chattels having some special or peculiar value; and (2) where a trust or fiduciary relation exists in relation to the chattels. In the case of a special or unique chattel, the remedy will not be granted when pecuniary value of the chattel has been fixed by the parties or can be readily ascertained, so that adequate compensation in the form of debt or damages can be recovered in an action at law. The substance of the foregoing may be generalized thus: "Where compensation in damages for a breach of an executory contract regarding chattels will furnish a complete and adequate remedy, specific performance will not be granted."

This is a case of a breach of an executory contract regarding ordinary chattels. Downing agreed to give sixty shares of stock found to be worth $3,600 for a yacht found and agreed to be worth $6,000. It does not appear that the yacht or the stock was a unique chattel, or of special or peculiar value. His guardian (not deeming it wise to attempt to pay for and maintain a six thousand dollar yacht out of an eleven thousand dollar estate) declines to complete the contract. For this breach the plaintiff is entitled to recover damages to the extent of his injury in a proper action at law. A competent referee has found the plaintiff entitled to nominal damages only. We do not object to a judgment for such damages in an action properly brought; but we submit that in this action the demurrer should be sustained, or the bill be dismissed.

It is the settled law of this state that the equity side of the court will not entertain jurisdiction of cases where the parties have a plain and adequate remedy at law. *Boston & Maine R. R.* v. *Portsmouth & Dover R. R.*, 57 N. H. 202; *Coe* v. *Lake Co.*, 37 N. H. 254; *Burnham* v. *Kempton*, 44 N. H. 78; *Miller* v. *Scammon*, 52 N. H. 609; *Brown* v. *Concord*, 56 N. H. 375; *Lyme* v.

*Allen*, 51 N. H. 242; *Savings Bank* v. *Portsmouth*, 52 N. H. 17; Pomeroy Eq. Jur., *s.* 1338.

Upon reason as well as upon authority, the granting of the equitable remedy of specific performance must rest upon the same criterion as the grant of the equitable remedy of injunction. They have the same origin, and were erected for precisely similar purposes. In the fact that in certain exceptional cases the usages and practice of the common law failed to protect certain equitable rights, and to prohibit certain inequitable wrongs, is to be found the source of these two equitable remedies. Where a party's natural or legal rights were threatened in such a form that the violation thereof, if allowed, would cause irreparable mischief, and of a character for which no money damages could compensate him, injunctions began and continue to be granted solely on the ground that the law in such cases did not afford the complainant a remedy adequate to the injury he was likely to receive; but whenever the threatened violation of rights was found to be of such a character that the party to be injured would be adequately compensated by the payment of money, he was left to his legal remedy, and the equitable remedy was withheld. The origin of specific performance is traced to the same source. Where parties contracted, and a failure by either to perform his contractual duty would leave the other without a remedy adequate to the injury he sustained by the breach of contract, where money damages would not adequately compensate him, the court granted and grants the equitable remedy and compels the performance. The one remedy restrains and prohibits an act for which, if done, the law would not afford the injured party an adequate remedy; the other commands the performance of an act which, if not done, would leave the party without an adequate remedy at law. Whatever may have been the circumstances of the particular case considered, whether the contract was in regard to land, incorporeal hereditaments, heirlooms, unique articles, pictures, jewels, maps, plans and surveys, title-deeds, ships, ships' registers, stocks, bonds, or as to any other personal chattel or personal contract whatever, the fundamental inquiry in all the cases is, Has the plaintiff an adequate legal remedy? Will damages compensate him? This is the real question, and the only question so far as the equitable jurisdiction is concerned. If the answer is Yes, the equitable remedy is denied; if the answer is No, the remedy is granted. " The remedy of the specific performance of contracts is purely equitable, given as a substitute for the legal remedy of compensation whenever the legal remedy is inadequate or impracticable." Pomeroy Eq. Jur., *s.* 1401. The equitable remedy does not proceed, as is sometimes erroneously supposed, upon any distinction between real and personal estate, but upon the ground that damages at law may not in the particular case afford a complete remedy. 2 Story Eq. Jur., *s.* 717. Mr. Pomeroy further says, that under this principle the equitable jurisdiction is exercised in two classes,—(1)

where damages at law are inadequate; (2) where such damages are impracticable,—and that it is the fundamental principle regulating the exercise of this equitable jurisdiction, that whenever the legal remedy of damages is sufficient, equity will not interfere, and the specific performance will be refused; and this is always the case where the contract is satisfied by the payment of money.   For this reason contracts concerning goods, wares, and merchandise, and other ordinary chattels, or public and other stocks or securities which have a market value and sale, are not specifically executed. Pomeroy Eq. Jur., *s.* 1402; Pomeroy Spec. Perf., *s.* 47.

In this case does not the ordinary suit at law afford an adequate remedy for the plaintiff's grievance?   Is there anything here but a simple breach of contract, for which the law has provided an ample remedy?   Cannot the plaintiff recover in damages to the last farthing of his injury?   In what small particular are his wrongs not to be compensated by money?   He has not attempted to answer the last question upon the facts found.   His disappointment in not receiving sixty shares Abbot-Downing Company stock is of the kind that money damages will assuage.   He was not seeking that stock for any unique or peculiar value it would be to him.   He was after the money value of the stock, not the stock itself.

It is claimed that Downing could have compelled specific performance against Eckstein, therefore Eckstein is legally entitled to specific performance against Downing, on the theory that the remedy is mutual.   Neither the premise nor the conclusion is correct.

1.  The yacht is not found to be a special or unique chattel of indefinite or uncertain value.   On the other hand, it appears from a fair reading of the whole case that she was an ordinary chattel, and that her value was fixed, admitted, and agreed upon by the parties, and "easily ascertained" by the referee.   In a suit by Downing against Eckstein for specific performance upon these facts, his damages would be just $2,400 ($6,000 less $3,600)—no more, no less.   His remedy at law would be plain, adequate, and certain, and he would be left to it.   *Dowling* v. *Betjemann,* 2 Johns. & H. 544—*S. C.,* 8 Jur. (N. S.) 538.

2.  If Downing could compel Eckstein to specifically perform, it does not follow that Eckstein is entitled to a decree here on this purely technical proposition.   " The effect of the general rule respecting mutuality, either of obligation or of remedy, is considered in the following cases, and I think it very clear that the rule was applied with much more strictness and severity in the older than in the later decisions; indeed, the rule, so far as it relates to the mutuality of the remedy alone, is evidently based upon no principles of abstract right and justice, but at most upon notions of expediency, and the arguments in its support are often mere repetitions of time-honored verbal formulas which, when closely analyzed, are found to have no real force or meaning."   Pomeroy

Spec. Perf. 237, and cases cited.    After a review of the cases in 3 Parsons on Contracts 409, note (*i*), it is said,—"At the same time it must be borne in mind, that although no legal invalidity affects the contract, the enforcement of it in equity is a matter of judicial discretion ; and notwithstanding there is no want of mutuality, the court will not act if, upon all the circumstances of the case, there is danger that its interposition would not be equitable."

If the discretion of the court is ever to be exercised, we respectfully submit that it ought not to be exercised for the first time within this jurisdiction in a contract of this character, and attendant with such harsh and offensive results to this guardian's trust estate.

SMITH, J.   The plaintiff agreed to sell to the defendant his yacht, claimed and admitted for the purpose of the question of jurisdiction to be worth $6,000, for sixty shares of stock in the Abbot-Downing Company found to be worth $3,600.   This executory contract, entered into August 14, 1884, was rescinded six days afterwards by the defendant's guardian.   The plaintiff seeks to enforce and the defendant resists specific performance of the contract.   Equity does not ordinarily interpose to enforce specific performance of a contract respecting personal property unless an adequate remedy at law cannot be had.   *Hill* v. *Bank*, 44 N. H. 567, 568.   If in this case the contract had been that the defendant should pay for the yacht in money, the plaintiff could not maintain a bill for specific performance without showing that his remedy by an action at law was inadequate.   *Noyes* v. *Marsh*, 123 Mass. 286, and cases cited.   His measure of damages would be the difference between the value of the property at the time of the breach of the contract, and the price fixed by the contract.   We do not see that the result is different because payment was stipulated to be made in shares of a corporation.   If the value of the stock be regarded as the contract price of the yacht, the question still is, How much are the plaintiff's damages by reason of the defendant's refusal to purchase his yacht?

It is not shown that an award of damages for the breach of the contract will not do exact justice between the parties.   The general rule in regard to contracts for the sale of stocks may be stated to be, that specific performance will not be decreed, because such contracts are capable of exact compensation in damages.   2 Story Eq. Jur., *s.* 724.   This rule is especially true of contracts for the sale of government stocks or bonds, which are always readily purchasable at their market value.   Specific performance of contracts for the sale of stocks in purely private corporations, such as banking, mining, manufacturing, and commercial companies, has sometimes been decreed upon the ground that damages at law do not furnish an adequate remedy for the breach.   In *Cushman* v. *Thayer Manufacturing Company*, 76 N. Y. 368, stress was put upon the fact

that the controlling motive of the purchaser may have been that the real worth of the stock may consist in the prospective rise which he anticipates might follow, or that his desire was to hold the stock as a premanent investment.   See, also, *White* v. *Schuyler*, 1 Abb. Pr. (N. S.) 300.   The criterion whether there is an adequate remedy at law has been said to depend upon the fact of the purchasability in the market of the stock contracted for.   22 Am. Law Reg. (N. S.) 489, 500.   The authorities, however, are conflicting.   In *Foll's Appeal*, 91 Pa. St. 434, decided in 1879, *Payson*, J., said,— "I know of no instance in this state in which a court of equity has decreed specific performance of a sale of stock."   In *Todd* v. *Taft*, 7 Allen 371, the point that the plaintiff had an adequate remedy at law was not raised.   In *Cud* v. *Rutter*, 1 P. Wms. 570, a decree for specific performance of a contract to deliver South Sea stock was denied, because the plaintiff might buy of any other person and be no more out of pocket than if the stock were delivered to him according to the agreement.   In *Cappur* v. *Harris*, Bunb. 135, the plaintiff was left to his remedy at law.   But in *Nutbrown* v. *Thornton*, 10 Ves. 161, and in *Mason* v. *Armitage*, 13 Ves. 37, specific performance was decreed.   In *Ross* v. *Union Pacific Railway Company*, Woolw. 26, *Miller*, J., said he saw no sound reason for any distinction between shares of the defendant company and government stocks, and that the rule in regard to them should be the same.   In *Ashe* v. *Johnson*, 2 Jones Eq. 149, specific performance was decreed.   And see 2 Story Eq. Jur. (13th ed.), *s*. 767 a, *n*. (a).

There are many other cases bearing more or less directly upon the question, of which it is unnecessary to speak in detail.   We do not hold that specific performance of a contract for the sale of stock or shares in a manufacturing corporation cannot be decreed under any circumstances, but this case comes within the general rule that equity jurisdiction for enforcing such performance is based on a want of adequate remedy at law.   The stock of the Abbot-Downing Company is not commonly offered for sale, and actual sales are very rare.   The plaintiff may be unable to purchase an equal number of shares for the same price.   But there is no evidence tending to show that he had any wish, or reason for wishing, to become the owner of the Abbot-Downing Company stock rather than any other stock of equal pecuniary value, or that he would not have agreed to take any other stock of equal value in payment of the yacht, or a sum of money equal to that value.   3 Pars. Cont. 370, 371.

The plaintiff contends that the defendant can maintain a bill for specific performance of the contract in regard to the sale of the yacht, and may therefore be compelled specifically to perform the same contract; in other words, he invokes the aid of the rule of mutuality of remedy.   It is said in some of the text-books that equity interferes to decree specific performance of a contract where the remedy is mutual.   2 Story Eq Jur., *s*. 723 ; Pomeroy Spec.

Perf., *s.* 165; Adams Eq. 80; Batten Spec. Perf. 66. Parsons says the meaning of the rule is not very clear, nor is it easy to make a satisfactory classification of the cases in which it has been announced as the ground of decision. 3 Pars. Cont. (6th ed.) 409, *n.* (*t*). It has been held in England that an infant cannot maintain a suit for specific performance of a contract, because the remedy is not mutual. *Flight* v. *Bolland*, 4 Russ. 298. The same reason may not exist in this state. *Hall* v. *Butterfield*, 59 N. H. 354; *Bartlett* v. *Bailey*, 59 N. H. 408. So where the plaintiff is insolvent, or is a servant employed to perform services of trust, it has been held he cannot maintain such a bill. 3 Pars. Cont. 409, *n.* (*t*). But these are cases where the remedy is not mutual, because the parties do not stand on an equal footing.

Equity will decree performance of a contract for land, because the damages recoverable at law may not be a complete remedy for the purchaser, to whom the land may have a peculiar and special value 2 Story Eq. Jur., *s.* 717. And the cases are numerous where the vendor has maintained a bill for the specific performance of a contract for land, and to compel payment of the purchase-money. *Ewins* v. *Gordon*, 49 N. H. 444. Equity compels specific performance in favor of the vendor, not on the ground of mutuality of remedy, but because compensation in damages, measured by the difference in price as ascertained by the market value and by the contract, is not regarded as adequate indemnity for the non-fulfilment of the contract. *Jones* v. *Newhall*, 115 Mass. 244, 248; *Old Colony Railroad* v. *Evans*, 6 Gray 25. In the English courts the doctrine of equitable conversion is held to be an additional ground for exercising chancery jurisdiction to compel specific performance of contracts for the sale or purchase of land. Fry Spec. Perf., *s.* 23.

The rule of mutuality of remedy is of English origin. 1 Spence Eq. Jur. 220, *n.* (*f*); 3 Pars. Cont. 350, *n.* (*a*). In that country there is no limitation upon the jurisdiction of their chancery courts, except so far as it is fixed and defined by usage. For no other reason, apparently, than the arbitrary one that the remedy should be mutual, the rule became established that either party might maintain a bill for specific performance if the other could, although the party bringing the bill could have no other relief than the recovery of the same amount of money or damages as would be recovered in a suit at law. *Hall* v. *Warren*, 9 Ves. 605; *Walker* v. *Eastern Counties Railway*, 6 Hare 594; *Kenney* v. *Wexham*, 6 Mad. 355. In Massachusetts the jurisdiction of their court to decree specific performance of a contract is limited to cases where " the parties have not a plain, adequate, and complete remedy at common law." Neither in that state nor in Pennsylvania does the English rule of mutuality of remedy seem to be followed in its fullest extent. *Jones* v. *Newhall*, 115 Mass. 244, 251; *Kauffman's Appeal*, 55 Pa. St. 383. It may be found upon examination that much of the obscurity in the cases upon the subject is due to the

failure to recognize the difference in the chancery powers of the courts of the different states.    One learned writer says the arguments in support of the rule "are often mere repetitions of time-honored verbal formulas, which, when closely analyzed, are found to have little or no real force and meaning."   Pomeroy Spec. Perf., s. 169, *n.* (1);—see, also, *Walker* v. *Eastern Counties Railway*, 6 Hare 594, 602. *Kenney* v. *Wexham*, 6 Mad. 355, 357, *Withy* v. *Cottle*, 1 Sim. & St. 174, *Adderley* v. *Dixon*, 1 Sim. & St. 607, *Cogent* v. *Gibson*, 33 Beav. 557.    Although equity has always existed as a part of the common law in New Hampshire (*Wells* v. *Pierce*, 27 N. H. 503, 512, *Penhallow* v. *Kimball*, 61 N. H. 596, 598), it has never been held, so far as we are aware, that a party is entitled to a decree for specific performance without regard to the fact whether his remedy at law is plain, adequate, and complete, merely because the other party would be entitled to it if he should ask for it.    We do not say, however, that cases may not arise where equity, upon the principle of even-handed dealing, may not afford the relief of specific performance under such circumstances.    The rule appears to have been applied with greater strictness in the older than in the later decisions.    "Indeed, the rule, so far as it relates to the mutuality of the remedy alone, is evidently based upon no principles of abstract right and justice, but at most upon notions of expediency."   Pomeroy Spec. Perf., *s.* 169, *n.* (1).    A technical rule is or should be subordinate to the general inquiry whether a party requires other and better relief than a suit at law can give.

The rule, however, is far from being universal.    Specific performance of contracts in regard to personal property is decreed only where the vendor stands in need of the specific relief which a court of equity only can give.   *Kauffman's Appeal*, 55 Pa. St. 383; *City of Memphis* v. *Brown*, 20 Wall. 289.    Indeed, in this respect there is no distinction between real estate and personal estate.    2 Story Eq. Jur., *s.* 717.    Hence it is a well established rule that relief by a decree for specific performance of a contract is not a matter of right in either party, but rests in the discretion of the court.   *Pickering* v. *Pickering*, 38 N. H. 400; *Eastman* v. *Plumer*, 46 N. H. 464; *Willard* v. *Tayloe*, 8 Wall. 557.    The discretion to be exercised, however, is not of an arbitrary and capricious character, but, in the language of Story, " that sound and reasonable discretion which governs itself so far as it may by general rules and principles, and at the same time grants or withholds relief, according to the circumstances of each particular case, when those rules and principles will not furnish any exact measure of justice between the parties.    On this account it is not possible to lay down rules or principles which are of absolute obligation and authority in all cases."   2 Story Eq. Jur., *s.* 742.    The question of discretion is a question of fact, and the question of fact often is the adequacy of the remedy at law under the circumstances of a particular case.

Equity enforces specific performance when there is no adequate

remedy at law.    This is the ground of this branch of equity jurisdiction, and it is not consistent with the test of mutuality of remedy. When payment is to be made in money, mutuality of remedy is not the test for the right to this remedy; and when the exchange on one side differs neither in purpose nor reason from a sale for money, the remedy of specific performance need not be mutual. The mutuality required is that which is necessary for creating a contract enforcible on both sides in some manner (*Ewins* v. *Gordon*, 49 N. H  444, 457), but not necessarily enforcible on both sides by specific performance.    In this case the exchange on the side of the defendant differs neither in purpose nor reason from a sale for money.  The plaintiff was benefited, not injured, by the defendant's breach of the contract.    Specific performance is a remedy decreed only in case of want of adequate relief at law.   Here there is no such want, and equity does not require a remedy by which the plaintiff would be injured to the amount of $2,400.   But if the plaintiff was injured by the breach, it is not found as a fact, nor can it be inferred as matter of law from the facts, that the plaintiff's remedy at law is not convenient and complete ; and for this reason the bill cannot be maintained.

*Bill dismissed.*

CARPENTER, J., did not sit : the others concurred.