# CHARLESTON.

## HISSAM v. PARRISH *et al.*

Submitted January 18, 1896—Decided March 21, 1896.

1. SPECIFIC PERFORMANCE—PREREQUISITES TO SPECIFIC PERFORMANCE.

    In order that a contract may be specifically enforced in a court of equity, it must be upon a valuable consideration, reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it is made; it must be, in general, mutual in its obligations and its remedy.

2. SPECIFIC PERFORMANCE—MUTUALITY OF CONTRACT.

    A contract, to be specifically enforced, must be mutual; that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, from personal incapacity, the nature of the contract, or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former.

3. SPECIFIC PERFORMANCE—AGREEMENT AS TO CHATTELS—COMPENSATION IN DAMAGES.

    A court of equity will not entertain jurisdiction for specific performance of an agreement respecting goods, chattels, stock, choses in action, and other things of a merely personal nature, where compensation in damages furnishes a complete and satisfactory remedy.

CAMPBELL & HOLT and E. S. DOOLITTLE, for appellants, cited Pom. Eq. Jur. §§ 1401; 1402, 1405; Pom. Spe. Perf. § 165; Beach, Cor. § 517; Code c. 54, s. 8; 25 W. Va. 127, 528; 35 W. Va. 194.

WYATT & HUTCHINSON and NORTHCOTT & PERRY for appellee, cited 22 Am. & Eng. Enc. Law, 1020, 1021; 35 W. Va. 194; 25 W. Va. 470; 14 S. E. Rep. 255; 3 N. E. Rep. 142; 79 Ala. 180; 6 Colo. 318; 45 N. J. Eq. 95; 38 N. E. Rep. 432; 82 Ala. 370; 8 So. Rep. 368.

ENGLISH, JUDGE:

This was a suit in equity brought by D. F. Hissam, in the Circuit Court of Cabell county, against M. F. Parrish, S. J. Kane, S. W. Neville, and A. H. Nagle, on the 23rd day of May, 1893, praying that the defendants, and each of them, be required to specifically perform a contract bearing date the 28th day of September, 1891, a copy of which is exhibited with the plaintiff's bill, and which agreement purports to have been made between D. F. Hissam, of the first part, and the Milton Manufacturing Company, of the second part, but which agreement appears to have been signed and sealed by D. F. Hissam, M. F. Parrish, S. J. Kane, S. W. Neville, and A. H. Nagle.

The plaintiff's bill alleges that the defendants and one W. J. Miller formed themselves into a company, known as the "Milton Manufacturing Company," for the purpose of buying and selling timber, cutting saw logs, planing and dressing lumber, and for the manufacturing of doors, sash, frame, *etc.*, and that the same was incorporated under the laws of the state of West Virginia, in the name and was known as the Milton Manufacturing Company, as above set out; that the stock of said company was composed of ———— shares of stock, at one hundred dollars per share; that, before the creation of said corporation and the formation of the aforesaid company, the said defendants, and each of them, for the purpose of creating said corporation and formation of said company as aforesaid, and inducing complainant to take stock in said company to the amount of eight shares, of one hundred dollars per share, entered into a written contract with complainant, signed by him and

each of the said defendants, and sealed with their seals (a copy of which contract is filed as part of complainant's bill); that, by the terms of said contract, the complainant was appointed and constituted bookkeeper and general manager of the said company, for the period of one year from the beginning of the operation of the business of the said company; that complainant did act as such bookkeeper and general manager of said company for the period of one year from the beginning of the said partnership business as aforesaid. Complainant also alleged that by the terms of said contract, the said defendants, and each of them, bound themselves, their heirs and assigns, to buy the stock of complainant, and pay him therefor at the rate of one hundred dollars per share; that, at the expiration of the said one year, he did offer and tender his said eight shares of stock to said defendants, and each of them, together with the certificate thereof, and still offers said shares of stock to said defendants, and did at, before, and since the expiration of said one year notify said defendants, and each of them, that he expected to dispose of said stock to the said defendants, and for the said defendants to purchase the same, as by their contract they were bound to do; that, at the expiration of the first year, the said company then had a good business and considerable valuable property out of which his said shares of stock could have been paid for, at the rate of one hundred dollars per share, with out taking more of the funds and stock in said company than his said eight shares of stock would bear to the whole stock of the said company; that the said defendants, and each of them, have the whole amount of the said stock in their possession and control, and are now receiving the rents, issues, and profits of the same, and have so received the rents, issues, and profits of the same for considerable time, and, by reason thereof, have received large dividends from the said company, and that there has been no division of said funds with complainant; and he prays that the said defendants, and each of them, be required to perform and comply with the terms of the said contract.

The contract, a copy of which is exhibited with the bill, reads as follows: (Exhibit No. 1): "Article of agreement

made this 28th day of September, 1891, between D. F. Hissam, party of the first part, and the Milton Manufacturing Company, party of the second part, witnesseth: That the said party of the first part hereby covenants and agrees that he will act as bookkeeper and manager of the said Milton Manufacturing Company, to the best of his ability, for the term of one year from the date aforesaid; that the party of the second part hereby covenants and agrees to appoint the said D. F. Hissam as bookkeeper of the said Milton Manufacturing Company for the term of one year from the date aforesaid, and to pay him for his services faithfully performed a salary not less than thirty five ($35) dollars per month. The said party of the second part further covenants and agrees that at the expiration of one year from the date aforesaid, and at the option of the said party of the first part, to purchase all of the stock of the said Milton Manufacturing Company subscribed for by said party of the first part, and to pay him for the same at the rate of one hundred dollars per share. It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators, and assigns of the respective parties. In witness whereof, the parties of these presents have hereunto set their hands and seals, the day and year first above written. D. F. Hissam. [Seal.] M. F. Parrish. [Seal.] S. J. Kane. [Seal.] S. W. Neville. [Seal.] A. H. Nagle. [Seal.]"

The defendants demurred to the plaintiff's bill, which demurrer, on consideration, was overruled. The appellants filed their answers. Depositions were taken and filed, and on the 21st of December, 1893, the cause was heard upon the whole record, and the court decreed that the plaintiff was entitled to the relief prayed for, and directed that the defendants should specifically perform said contract.

The first error relied on by the appellants is as to the action of the court in overruling their demurrer to the plaintiff's bill, and requiring them to answer. In discussing the questions raised by this demurrer, the question which first presents itself is whether the contract which is made a part of the bill is such as calls for specific enforcement in a court

of equity. It will be perceived that the bill is silent in its allegations as to the sale of the eight shares of stock being optional by the terms of the contract, so far as the plaintiff is concerned. If the stock advanced in value, and was worth a premium at the end of the year, so that the defendants might derive a profit by the purchase of the stock, they would have been entirely without remedy, in a court of equity or otherwise, to enforce a sale and delivery of the stock by the plaintiff; and yet, the stock having become depressed and worthless, he asserts his claim to have the contract specifically enforced. This of itself appears to show an utter want of mutuality. Fry, Spec. Perf. p. 198, § 286, upon this question, states the law thus: "A contract, to be specifically enforced by the court, must be mutual; that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, whether from personal incapacity, the nature of the contract, or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former." In note 1 it is said: "No rule in equity is more thoroughly settled than this"— citing *Benedict* v. *Lynch*, 1 Johns. Ch. 370, and numerous other authorities, and stating, further, that "a party not bound by the agreement itself has no right to call upon a court of equity to enforce specific performance against the other contracting party by expressing his willingness in his bill to perform his part of the engagement. His right to the aid of the court does not depend upon his subsequent offer to perform the contract on his part, but upon its original obligatory character"—citing *Duvall* v. *Myers*, 2 Md. Ch. 401, and *Bodine* v. *Glading*, 21 Pa. St. 50. In the case of *Burke* v. *Parke*, 5 W. Va. 122, this Court held that a court of equity will not entertain jurisdiction for the specific performance of an agreement respecting goods, chattels, stock, choses in action, and other things of a merely personal nature, where compensation in damages furnishes a complete and satisfactory remedy. See 2 Story, Eq. Jur. § 718. See,

also, Pom. Eq. Jur. § 1401, where the law is thus stated: "The remedy of the specific performance of contract is purely equitable, given as a substitute for the legal remedy of compensation whenever the legal remedy is inadequate or impracticable. In the language of Lord Selborne: 'The principle which is material to be considered is that the court gives specific performance, instead of damages, only when it can by that means do more perfect and complete justice." '

Is there anything in the case under consideration which would, in accordance with these principles, give jurisdiction to a court of equity ? The entire demand asserted by the bill is for the payment by the defendants for eight shares of the stock of the Milton Manufacturing Company; and we can see nothing which would prevent the collection of the amount in an action of covenant or *assumpsit* if the plaintiff could show himself entitled to recover the amount. Again, Pomeroy, in speaking of the essential elements and incidents which entitle a party to specific performance, states the law as follows, in section 1405, vol. 3, of his Equity Jurisprudence: "Assuming that a contract has been completely concluded, and that it belongs to a class capable of being enforced, it must still possess certain essential elements and incidents, in order that a court of equity may exercise the jurisdiction to compel its performance. Some of these elements affect its validity; others, its equitable character. It must be upon a valuable consideration. It must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made. It must be, in general, mutual in its obligations and its remedy." Can we say that the contract we are considering meets with these requirements? We have attempted to show its want of mutuality, for the reason that a sale of the stock was optional with the plaintiff, and for that reason could not be enforced against him. Was there any consideration moving from the plaintiff for the promise on the part of the defendants to purchase his stock at one hundred dollars per share ? It is true that the plaintiff alleges in his bill that, before the creation of said corporation and the formation of said company, the defendants, for the purpose of creating

said corporation and inducing him to take stock in said company to the amount of eight shares, of one hundred dollars per share, entered into the contract which is sought to be specifically enforced; but there is nothing of that kind appearing in the contract, which is made part of the bill, and we must look to the contract for its terms and parties, and, so far from being made before the corporation was formed, on the face of the contract the "Milton Manufacturing Company" appears to be made party of the second part, although it is signed by the defendants, and for this reason said contract can not be considered reasonably certain as to its parties, and for these reasons my conclusion is that the court erred in overruling the demurrer.

But, if there should be any doubt upon that proposition the bill should have been dismissed at the hearing, for the reason that the contract proved is not the contract alleged. In the bill the plaintiff charges that, for the purpose of creating said corporation, and forming said company, and inducing him to take eight shares of stock at one hundred dollars per share, the defendants entered into a written contract with him, agreeing to appoint him bookkeeper and general manager of said company, for the period of one year from the beginning of the operation of the business, and bound themselves to purchase the stock of plaintiff, and pay him therefor at the rate of one hundred dollars per share. The bill, however, omits to state that the purchase by the defendants of his stock at that price was to be at plaintiff's option, which appears on the face of the contract. And the plaintiff, in giving his testimony in the case, when asked, "What consideration did you pay the defendants for executing to you the contract sued upon?" answered, "None;" and in reply to the question, "Was it not understood between you and them that you were to work one year for the company as bookkeeper and manager thereof, in consideration of their agreeing at the expiration of said year to buy the eight shares subscribed for by you?" he says: "I do not consider that that was the consideration for which I was to work. I was to receive thirty five dollars per month for my work." And, further on in his testimony, he states he was working for the com-

pany and not for the defendants; and was paid for his work by the company.   The portion, then, of the contract which the court was asked to specifically perform, is that in reference to the purchase of the plaintiff's eight shares of stock; but in that portion of the contract, as we have attempted to show, there is no mutuality and no consideration, and for the further reason that, in my opinion, the plaintiff had a plain, complete, and adequate remedy at law, the bill should have been dismissed; and the case should have taken this course for the further reason that the contract proved is not the contract charged in the bill, the rule in this regard being the same in regard to personalty as it is to realty.   See the case of *Patrick* v. *Horton* 3 W. Va. 23, where it is held that "to enable a court to enforce a specific contract for the sale of real estate, the contract must be established by competent proof to be clear, definite, and unequivocal in all its terms, and the contract proved must be that charged in the bill."

In the light of these authorities, and for the foregoing reasons, the decree complained of must be reversed, and the bill dismissed, with costs to the appellants, but without prejudice as to such proceedings at law as the appellee may be advised to take.