Rattle, J.
 

 An attentive examination of this ease, has led us to the conclusion that the agreement entered into between the plaintiff, Austin, and the defendants, is abinding contract, and being in writing, signed by the defendant, is one, of which the Court of Equity, acting upon its well established principles, will decree a specific performance. It may be admitted that at the time when this agreement was made, it was merely voluntary and not obligatory upon the parties for the want ’ofa consideration; but when the plaintiff, Austin, afterwards . went forward and subscribed on the books of the North Carolina Railroad Company, for eighty shares of stock, in pursuance of what was called
 
 “
 
 the hundred man plan,” it changed its character, and became invested with all the essential qualities of a valid contract. From, the recital which p2-ecede8 the agreement, and which is explanatory of its objects, it plainly appears that the plaintiff1, Austin, had not then become a subscriber for stock upon the books of the Railroad Company, but that he had entered into an arrangement with others to do so whenever a sufficient number of men could be
 
 *267
 
 found to secure the charter of the company by taking the required amount of stock, not taken by others.' It appears further, that this arrangement, or plan was reduced to writing and that e ch person who signed it, was called a subscriber, and in that sense, and not in the sense of having become already a subscriber on the books of the Bailroad Company, for stock, was the term used. This is clearly manifest, from its being stated expressly in the recital, that the arrangement commonly called the hundred man plan, was
 
 “
 
 intended to secure the charter of the North Carolina Bailroad Company.” From this recital, introduced for the very purpose of explaining the agreement, which the plaintiff, Austin, and the defendants, were about to enter into, it is clear that when the parties spoke of the “ said individual stock already taken ” by the plaintiff, they did not mean stock for which the plaintiff had alredy subscribed in the books of the company, but only what he had previously engaged with others to take, in order to secure the charter of the company. Admitting then, that when the agreement in question, was signed by the parties, the defendants were bound in honor only, and not in law to fulfill it, and that they might have notified the plaintiff, and thereby have avoided it, yet when the plaintiff relying upon their engagement to take a portion of the stock for which he might subscribe, went forward and by his subscription on the books of the company, bound himself to pay for eighty shares of stock in such manner as might be required by the company, the defendants became legally bound to relieve him by taking a certain 'portion of such stock. The weighty obligation assumed by the plaintiff of paying, either in money or work, eight thousand dollars towards the accomplishment of what was supposed a great public improvement, in which profits to the individual subscribers were indeed anticipated, but were necessarily somewhat doubtful and contingent, and were cer- • tainly not to be realized for several years, formed undoubt
 
 *268
 
 edly a
 
 valuable
 
 consideration for the defendant’s promise to him. But the defendants object, that the contract is one for the transfer of stock in a public company, for the breach of which, the plaintiff has his remedy at law, and that, therefore, the court of equity will not interfere to give the extraordinary relief of decreeing a specific performance. This objection might avail when applied to a contract for the sale and transfer of stock in a company, already in existence, and whose stock had in market a certain or nearly certain value. In such a case damages at law would afford an adequate and complete redress. 2 Story Eq. Sec. 717. But the slightest reflection will convince any one who turns his attention to the subject, that this is a very different case. Here the North Carolina Railroad company was just struggling into life, and the subscribers for its stock were taking upon themselves very heavy burdens, with a dim prospect of future advantage." It would therefore be manifestly impossible to give to the plaintiff, in a suit at law, damages at all commensurate with the injury which he might sustain by the failure of the defendants to fulfill their engagement with him. 1 Sto. Eq. Sec. 717, 718 719. This view of the case answers also the objection that it would operate hardly upon the defendants to compel a specific execution of their contract. It would be much harder upon the plaintiff if it should not be done. Ibid Sec. 724 et seq. It is objected further, for the defendants, that the remedy must be mutual, “ that it is requisite that a mutual enforcement in specie be practicable.” Adams Eq. 80. That is so ; and here we think there can be no doubt that the defendants could compel the plaintiff, Austin, to transfer
 
 to
 
 them the number of shares which they agreed to take. But it is objected again for the defendants, that though they signed the agreement in question, they did so upon the express understanding and engagement that he was to procure fo.r them contracts for work and labor in grading the track of the Rail
 
 *269
 
 road which would save them from the payment of their subscriptions in money, and that their agreement with the plaintiff was to become obligatory upon them only in the event of Ms procuring for them such contracts. These alleged stipulations of the plaintiff, were, it is admitted, not inserted in the written agreement, because the defendants thought they might rely upon the parol promise of the plaintiff to fulfill them. The doctrine of Courts of Equity is that they “ will allow the defendant to show that by fraud, accident, or mistake, the thing bought is different from what he intended ;
 
 or that material terms have been omitted in the written agreement
 
 / or that there has been a variation of it by parol; or that there has been a parol discharge of a written contract,” and, that if any of these things be shown by parol, they will decline to interfere, and leave the party to his remedy at law. 2 Sto. Eq. Sec. 770. Whether the present case comes within the operation of the doctrine, it is unnessary for us to decide ; for if it does, the defendants have altogether failed in proving their allegations. Erom the proof, it rather appears that although the subject of procuring contracts for work on the road was discussed between the parties, and although a plan for obtaining such contracts by the plaintiff and the defendants and others was actually drawn up in writing, yet the paper was never signed, and was finally abandoned, and it seemed to be understood that each party was to procure for himself such contracts as he could.
 

 Upon a review of the whole case, we think we have shown that the agreement between the plaintiff, Austin, and the defendants, is founded upon a valuable consideration; is mutual, and capable of being mutually enforced in specie; is of such a nature, that an enforcement in specie is necessary to the plaintiff, and not oppressive to the defendants, and our conclusion, therefore, is, that such agreement, being in writing and signed by the defendants, ought to be specifically enforced by this Court, Adams’ Eq. p. 78 et seq. The North
 
 *270
 
 Carolina Railroad Company, which has been made a party-plaintiff for that purpose, states its willingness to accept the defendants, as subscribers for its stock, in lieu of the plaintiff, Austin, who may, upon making a rateable deduction for the eighteen shares of which he was relieved by the company, have a decree according to his prayer.