RAWLS, Judge.
Appellant-plaintiffs, who will sometimes be referred to as the Harbesons, filed their complaint praying for specific performance on the part of appellee-defendant Jackson Land Company, a Florida Corporation, which had contracted to purchase certain shares of capital stock of Pensacola Hotel Company, a Florida Corporation. From the Chancellor’s order dismissing the complaint, plaintiffs have appealed.
The Harbesons pose two points on this appeal, viz.:
1. Whether the sellers of stock (the Harbesons) in this closely held corporation (Pensacola Hotel Company) are entitled to specific performance as against a defaulting purchaser (Jackson Land Company).
2. Whether the contract provision, relative to termination of purchaser’s rights in case of default, is an exclusive remedy which would prevent the sellers from obtaining specific performance.
On March 28, 1960, the Harbesons and Jackson Land Company entered into a contract in which the Harbesons agreed to sell and Jackson Land Company agreed to purchase 175%; shares of capital stock in Pensacola Hotel Company for $310,000, payable $50,000 upon execution of the contract and $3,750 quarterly beginning July 15, 1960.
In accordance with the terms of the contract the sellers had the stock certificates transferred on the books of the Pensacola Hotel Company to the purchaser, reissued in five certificates of 35)45 shares each in the name of the purchaser, and deposited with the Southern National Bank of Fort Walton Beach as escrow agent. The contract further provided that if the purchaser defaulted in making the payments, a majority of the sellers may, by written notice to the escrow agent, declare the entire balance of the purchase price due and payable. Upon receipt of the notice of default the escrow agent was required to notify, by registered mail, the purchaser who would have 20 days thereafter to pay the entire balance. Upon failure to pay, the escrow agent was to return one stock certificate to each of the five sellers. In event of default the purchaser’s rights were to> cease and it would not be entitled to any of the shares unless the entire purchase price had been paid in full. If default be declared by the sellers, who reserved a lien for balance due, the balance of the purchase price was to draw interest at 6%. The contract was signed and sealed by each of the sellers and by Lizzie May Jackson, President, and William B. Harbeson, Secretary for Jackson Land Company.
The sellers in their complaint alleged the execution of the contract; payment of $50,000 plus four quarterly payments by the *729 purchaser; refusal of the purchaser, Jackson Land Company, to make further payments; and notice of default given by the sellers to the escrow agent. The complaint further alleged the death of Gene E. Harbe-son, whose only heir was Minna L. Har-beson; that all shares of capital stock of Pensacola Hotel Company were once owned by W. B. Harbeson; that all owners of such stock acquired the same under the will of the late W. B. Harbeson; that no shares have ever been sold with the exception of the shares now in controversy; that the true value of the stock is not ascertainable . but the stock here in controversy has a special value to Jackson Land Company since the practical effect of the sale was to give the purchaser control of the Pensacola Hotel Company; and that plaintiffs are ready to deliver the stock but the damages sustained by them for failure of Jackson Land Company to comply with the terms of the contract are incapable of ascertainment. The plaintiffs prayed that the Pensacola Hotel Company be restrained from paying dividends to the Jackson Land Company for the stock in question pending litigation and that the Jackson Land Company be required to specifically perform its obligations under the contract.
Directing our attention to the Har-besons’ first point, it is well settled in this jurisdiction that a suit for specific performance will lie under appropriate circumstances for enforcement of a contract for the sale and purchase of stock in a closely-held corporation. The landmark case establishing this rule is Baruch v. W. B. Haggerty, Inc.[1] There, the complaint alleged that the parties entered into an agreement for the sale and purchase of stock in a closely-held corporation. The seller alleged his willingness to perform and alleged a breach on the part of the purchasers. The Chancellor refused to dismiss the seller’s bill of complaint praying for specific performance on the part of the buyers, and the buyers appealed. The Supreme Court laid down the rule applicable to such agreements when it stated on pages 799 and 800 of 188 So. as follows:
“This remedy, if available to the purchaser, is likewise available to the seller, because relief is based upon mutuality of remedy. On this subject, Corpus Juris contains the following:
“ ‘Although there is contrary authority, specific performance of contracts for the sale of chattels and things in action has been founded on the principle that where the purchaser might obtain the remedy, the seller is likewise entitled to it. Thus, the relief has been granted on such ground in the case of sales of stocks, patents, annuities, and debts.’ 58 C.J. 1044, Sec. 275.
“In this connection see, also, Blue Point Oyster Co. v. Haagenson, D.C., 209 F. 278; Cole v. Cole Realty Co., 169 Mich. 347, 135 N.W. 329; Austin v. Gillaspie, 54 N.C. 261; Hissam v. Parish, 41 W.Va. 686, 24 S.E. 600, 56 Am.St.Rep. 892; Bumgardner v. Leavitt, 35 W.Va. 194, 13 S.E. 67, 12 L.R.A. 776.
“The bill of complaint in this case contained allegations showing that this corporation was a closed one, the seller owning all of the outstanding stock; that none of the stock had ever been put on the market, and so had no market value; that the stock had no fixed value and had no par value. * * *
“Under the factual situation as alleged by the bill to exist, the buyer would be entitled to invoke the aid of equity to enforce the provisions of this contract for the sale of stock in this corporation. Since the jurisdiction of equity could be invoked on behalf of the buyer, mutuality of remedy requires that jurisdiction of equity likewise be invoked and employed by the seller to enforce the provisions of this contract *730 for the sale of stock. On this record the chancellor cannot be said to have erred in taking jurisdiction of the cause.”
Subsequent decisions sustaining this rule are found in McCutcheon v. National Acceptance Corporation[2] and Rosenberg v. Novack.[3]
Jackson Land Company concedes that specific performance may lie under appropriate circumstances; however, it strongly urges that the provisions of the contract in the case at bar pertaining to default precludes such a remedy, such contention bringing into focus the second point on appeal. It is Jackson’s position that specific performance is a discretionary remedy for the enforcement of a contract in accordance with its terms; that the terms of the instant contract pertaining to default limits performance to: (1) the termination of all interest of the buyers in the stock, and (2) the return of the stock to the sellers by the escrow agent; that since the stock certificates were endorsed in blank by Jackson and deposited with the escrow agent, notice of default automatically vested title in said stock in the Harbesons, hence no remaining performance may be decreed against Jackson Land Company. Jackson then submits that the situation is comparable to that of a seller under a conditional sales contract who has repossessed itself of the property covered by the contract, and cites cases dealing with such situations as authority for its contentions. We do not agree.
The instant contract provided:
1. The purchaser unqualifiedly agreed to purchase.
2. The sellers surrendered the rights of ownership of the stock to the purchasers at the time of executing the contract (voting rights and right to dividends).
3. Title to the stock passed to the purchasers.
We find that the terms of the instant contract are more analogous to the facts set out in Chace v. Johnson[4] than to the conditional sales situations urged by Jackson. The Chace case concerned a contract of sale and purchase of certain land. The price .agreed upon was $4,200, with $840 paid when the contract was signed, and the balance payable in annual installments of $420 together with interest. Chace executed a deed conveying the land to Johnson and deposited the same with the Ocala National Bank in escrow. The contract contained a clause in the following language :
“It is specifically understood and agreed that should the party of the second part fail for the space of 30' days to pay either of the deferred payments and interest thereon as herein provided * * * the party of the first part shall have the right to immediately cancel this contract, recall said deed from the Ocala National Bank, and keep and retain all payments of principal and interest as liquidated damages, and this contract shall from thenceforth be null and void, and the party of the second part shall have no further rights thereunder * *
The Supreme Court, in holding that the default clause merely secured to the vendor an option to rescind the agreement and take what damage he actually sustained or waive the privilege and bring action upon the unqualified agreement of the purchaser to pay, stated:
“The provision in the contract under consideration relating to the liquidated *731 ■damages does not specify what sum shall be so regarded in the event of a breach of its terms by the vendee, but provides for an increasing penalty in inverse ratio to the purchaser’s performance of the contract’s terms. The less he performs the less he forfeits, but the nearer he comes to a complete fulfillment of the agreements on his part to be performed without completing them the greater sum he forfeits to the vendor.”
Had Jackson paid all but a few thousand dollars upon the purchase price and the Harbesons attempted to retake the stock upon such default, it is conclusive that equity would have intervened to have prevented such a forfeiture as provided in the default provision of the contract. Had the Harbesons failed to deliver their stock certificates to the escrow agent as called for in the contract, then Jackson would have been entitled to specific performance. Mutuality of remedy requires a like remedy for either party.
We conclude that the allegations of the complaint together with consideration of the contract as a whole, were sufficient to state a cause of action for equitable relief, and that it was error for the Chancellor to dismiss same.
Reversed.
CARROLL, DONALD K., C. J., and STURGIS, J., concur.

. Baruch v. W. B. Haggerty, Inc., 137 Fla. 799, 188 So. 797 (1939).

. McCutcheon v. National Acceptance Corporation, 143 Fla. 663, 197 So. 475, 130 A.L.R. 915 (1940).

. Rosenberg v. Novack, 112 So.2d 60 (Fla.App.3d. 1959).

. Chace v. Johnson, 98 Fla. 118, 123 So. 519 (1929); see also Chace v. Smith, 102 Fla. 1013, 136 So. 672 (1931).